MYERS & CHAPMAN, INCORPORATED v. THOMAS G. EVANS, INCORPORATED, ET AL.

No. 8726SC595

(Filed 1 March 1988)

1. **Fraud § 3— applications based on knowledge, information and belief—no representations of past or existing facts**

   Plaintiff's evidence was insufficient for the jury on the issue of fraud by defendant corporate directors in submitting to plaintiff applications for construction payments misrepresenting that certain specialty items had been purchased and stored where one defendant asserted in the payment applications only that the work covered by the applications had been completed "to the best of his knowledge, information, and belief," and the payment applications thus made no representations of past or existing facts.

2. **Corporations § 13— liability of directors—gross negligence—erroneous instructions**

   In an action to recover against corporate directors for gross negligence in failing to prevent fraud by corporate agents, the trial court erred in failing to

give the jury instructions to the effect that corporate directors ordinarily will not be held liable for isolated or occasional wrongdoing over which they have no practical control and in giving the jury an instruction suggesting that directors and managing officers are chargeable with an omniscient knowledge of the company's affairs and are liable for damages to third parties resulting from simple negligence.

**3. Corporations § 13— reasonable reliance on project manager—no gross negligence by directors**

In an action against corporate directors for gross negligence in permitting fraud by a corporate agent in the submission of applications to plaintiff for construction payments, evidence establishing that the project manager for the corporation had never given defendants cause to doubt his integrity entitled defendants to an instruction that defendants were not guilty of gross negligence if they reasonably relied on their project manager's representations in making the payment applications.

APPEAL by defendants from *Burroughs, Robert M., Judge.* Judgment entered 9 February 1987 in MECKLENBURG County Superior Court. Heard in the Court of Appeals 4 January 1988.

Plaintiff general contractor Myers & Chapman, Inc. instituted this civil action on 25 March 1985 against defendants Thomas G. Evans, Inc. (Evans, Inc.), Thomas G. Evans, and his wife, Brenda, seeking damages for fraud. The action was tried by a jury, which returned a verdict against the defendants, jointly and severally, in the amount of $11,731 in compensatory damages. The court entered a judgment on 9 February 1987 that the actions of defendants constituted an unfair trade practice, trebled the damages, and awarded attorney fees to the plaintiff in the amount of $10,000, plus costs. Defendants appealed.

*Robinson, Bradshaw & Hinson, P.A., by Richard A. Vinroot and Samuel D. Walker, for plaintiff-appellee.*

*Parker, Poe, Thompson, Bernstein, Gage & Preston, by Fred T. Lowrance, for defendants-appellants.*

WELLS, Judge.

Defendants bring forward twelve separate assignments of error. However, the salient issues in this appeal are (1) whether the evidence supports the jury's finding that individual defendants Mr. and Mrs. Evans committed fraud, and (2) whether the trial court's instruction on gross negligence to permit a fraud was defective.

The evidence presented at trial established the following: On 14 December 1984 defendant Evans, Inc. entered into a subcontract with plaintiff general contractor to furnish and install the heating, ventilating, and air conditioning system for a "strip" shopping center in High Point. The original contract price of $104,500 was later increased to $113,865. The contract called for Evans, Inc. to submit to plaintiff general contractor periodic applications for payment as the work progressed. Each payment application contained the following statement undersigned by Mr. Evans:

> The undersigned Contractor certifies that to the best of his knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by him for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

> CONTRACTOR: Thomas G. Evans, Inc.

> By: _____ Date _____

Each such payment application was also notarized by Brenda Evans who, together with her husband, were the sole directors and officers of defendant corporation. On 25 April 1984 Evans, Inc. submitted Application for Payment No. 2 to the plaintiff. (Application No. 1 is irrelevant to this action.) Application No. 2 solicited payment for $33,227 for equipment purportedly ordered and stored in a local bonded warehouse for eventual installment, including $11,247 worth of specialty items—principally small, sophisticated electronic devices—which later could not be found. The typed Application for Payment No. 2 delivered to plaintiff was based on a handwritten application prepared by Mr. William Jay Gould, defendants' estimator and project manager. Mr. Gould's application, in turn, relied on a written confirmation of receipt of goods issued by the warehouse to which the equipment had been shipped for storage. In May 1984 plaintiff paid the subcontractor for all the materials claimed purchased and stored in the 25 April application. In Application for Payment No. 3, submitted 22 June 1984, Evans, Inc., recertified that the specialty items had been purchased and stored.

In late August 1984, Mr. Evans decided to wind up his firm's business. Since the work on the shopping center project was still

ongoing, Evans, Inc. arranged to subcontract to Custom Comfort, Inc. to finish the job. Plaintiff general contractor, Evans, Inc., and Custom Comfort, Inc. all agreed that the project would be completed by Custom Comfort, Inc. for the balance remaining in the contract between Evans, Inc. and the plaintiff. After commencing work Custom Comfort, Inc. was unable to locate the $11,247 in specialty items referenced above. The plaintiff reordered the specialty items, paid for them a second time and, eventually, brought this lawsuit to recoup his loss.

It is settled in our State's case law that directors of corporations may be held individually liable to injured third parties for fraudulent misrepresentations personally made by them. *Minnis v. Sharpe*, 202 N.C. 300, 162 S.E. 606 (1932); R. M. Robinson, *North Carolina Corporation Law and Practice* § 12-7 (3rd ed. 1983); *see also* Annot., 25 A.L.R. 3d 941 (1969). It is equally settled in our State that corporate directors may incur individual liability for grossly negligent failure to prevent fraudulent conduct by corporate agents. *Minnis, supra.* However, North Carolina does not impose upon corporate directors a duty of omniscience. Our courts have explicitly declared that directors are not insurers of the integrity of the corporate officers and agents and ordinarily will not be charged with notice of isolated or occasional fraud or mismanagement. *Id.* In addition, our Supreme Court has held that the selfsame individual liability for fraud and gross neglect as attaches to directors attaches equally to a corporation's "president or other managers," *Caldwell v. Bates*, 118 N.C. 323, 24 S.E. 481 (1896), in other words, to the *managing officers* of the corporate entity.

In the present case individual defendants Thomas G. Evans and his wife, Brenda, were directors and managing officers of the corporate defendant. As such, they could be held liable, under the law summarized above, for (1) fraud or (2) gross neglect in failing to prevent fraudulent conduct. Consequently, at trial plaintiff strove to prove that Mr. and Mrs. Evans falsely represented in Application for Payment Nos. 2 and 3 that $11,247 in specialty items had been purchased and stored, that said representations were known by defendants to be untrue at the time made, or were made in reckless disregard whether they were true or not. At the conclusion of the trial the court submitted nine issues to

the jury. Issues two through five, and the jury's responses, were as follows:

2. Did the individual defendants, Thomas G. Evans or Brenda Evans, commit a fraud by submitting the payment application of April 20, 1984 or June 22, 1984 to Myers & Chapman, Inc.?

    ANSWER: Thomas G. Evans    yes
             Brenda Evans       no

3. Did Thomas G. Evans or Brenda Evans act with such gross negligence as officers and directors of Thomas G. Evans, Inc., so as to permit a fraud to be committed on Myers & Chapman, Inc.?

    ANSWER: Thomas G. Evans    yes
             Brenda Evans       yes

4. Did Thomas G. Evans or Brenda Evans submit an application for payment to Myers & Chapman, Inc., knowing it to be false?

    ANSWER: Thomas G. Evans    no
             Brenda Evans       no

5. Did Thomas G. Evans or Brenda Evans act in such a grossly negligent way, in the submission of the application for payment so as to permit a fraud to be committed on Myers & Chapman, Inc.?

    ANSWER: Thomas G. Evans    yes
             Brenda Evans       yes

On the basis of these jury findings the trial court concluded in its judgment "that the actions of the defendants caused or allowed a false application and certificate for construction payments to be given to the plaintiff; [and] that said action was fraudulent and that the application and certificate was submitted under circumstances such that the defendants' actions were grossly negligent." On appeal defendants strenuously contend, *inter alia*, that there was insufficient evidence to support the jury's finding of fraud and that the trial court's charge on gross negligence to permit fraud was defective. We agree.

[1]   As indicated above, the gravamen of plaintiff's complaint was that Application for Payment Nos. 2 and 3 fraudulently misrepresented that certain specialty items had been purchased and stored. But we conclude that the disputed payment applications make no representations of past or existing facts. In each application Mr. Evans vouches for no more than that "to the *best of his knowledge, information, and belief* the Work covered by this Application for Payment has been completed . . . ." (Emphasis added.) Such language does not assert a fact, but rather states an opinion, or recommendation, and, hence, cannot be actionable. *Myrtle Apartments v. Casualty Co.*, 258 N.C. 49, 127 S.E. 2d 759 (1962). Since plaintiff could not prove a representation, *ipso facto* he could not prove a fraud, inasmuch as representation is one of the essential elements of the action. *Johnson v. Insurance Co.*, 300 N.C. 247, 266 S.E. 2d 610 (1980). In other words, plaintiff failed to make out a *prima facie* case, and the jury could not permissibly find as fact, in responding to issue two, that Mr. Evans committed fraud by submitting the payment applications. In fact, the same jury found, in response to issue four, that the individual defendants did not knowingly submit a false application for payment to plaintiff. In other words, the jury found no scienter, without which an action in deceit cannot be made out. *Id.* Since scienter was not found by the trier of fact, and since as a matter of law no representation of existing fact was made by defendants, it was error for the trial court to conclude in its Judgment that the actions of defendants were fraudulent.

[2]   We further agree with defendants that the trial court incompletely and inaccurately charged the jury on whether defendants acted with such gross negligence so as to permit a fraud. The trial court took its instruction on this issue almost verbatim from *Minnis*, but omitted the following limiting language of that decision:

> Directors are not guarantors of the solvency of a corporation, nor are they insurers of the honesty and integrity of the officers and agents. Neither are they required to personally supervise all the details of business transactions.

> . . . .

> Ordinarily, of course, directors would not be charged with notice by virtue of desultory, occasional or disconnected

acts of mismanagement or fraudulent transactions, but in cases where mismanagement and fraud has been persistently and continuously practiced for substantial periods of time a jury must determine whether the directors, in the exercise of that degree of care which the law imposes, should have known of such practices and that persons dealing with the corporation would be injured thereby.

These passages emphatically enunciate that directors ordinarily will not be held liable for isolated or occasional wrongdoing over which they have no practical control. A corporate contractor may have dozens of agents in his employ dispersed at sundry work sites scattered over a wide geographical area. A project site may be hundreds of miles from the home office. Directors and corporate management must rely, and our settled law permits them reasonably to rely, on their agents and employees. It was reversible error for the trial court to have selectively ignored the passages of *Minnis* which narrow the scope of directors' liability for gross negligence to permit fraud.

Not only did the court incompletely instruct on the law, it gratuitously appended the following embellishment:

It is immaterial whether the defendants, Mr. or Mrs. Evans were cognizant of the fact that the equipment was not stored as certified. The law charges them with actual knowledge of the company's affairs and holds them responsible for damages sustained by others by reason of their negligence, fraud or deceit.

This instruction was erroneous because it suggested to the jury that directors and managing officers are chargeable with an omniscient knowledge of the company's affairs and are liable for damages to third parties resulting from simple negligence. This is not the law in North Carolina. The rule of *Minnis* provides that, ordinarily, directors are liable for failure to prevent fraud by corporate agents only where such fraudulent conduct has been engaged in "persistently and continuously . . . for substantial periods of time."

[3]  In the present case, the evidence presented at trial established that Mr. William Jay Gould, project manager for Evans, Inc. at the High Point "strip" project, had never given the defend-

ants cause to doubt his integrity. Mr. Leroy R. Katz, estimation and project manager for plaintiff at the High Point job site, also testified to Mr. Gould's trustworthiness. This evidence entitled defendants to an instruction to the effect that if the jury should find that defendants reasonably relied on Mr. Gould's representations, then the issue as to gross neglect should be answered in their favor.

For the reasons stated, the judgment against the individual defendants for intentional fraud is reversed. On the issue of whether by their gross neglect the individual defendants permitted a fraud, there must be a new trial; accordingly, on new trial there must be a redetermination of the claim for treble damages.

We find no error in the trial as to Evans, Inc.

No error in part; reversed in part; new trial.

Judges ARNOLD and SMITH concur.