## JOHN O'DONNELL v. PATRICK CARR.

### (Filed 24 January, 1925.)

**Principal and Agent—Special Authority—Evidence—Contracts—Specific Performance—Equity.**

Evidence that a resident real estate agent began by correspondence a negotiation of sale with the nonresident owner of a city lot, who rejected several tentative propositions to sell to customers of the real estate agent and finally stated a minimum price at which he would sell, is not, in itself, sufficient to authorize the agent to sell at that price

or for the attempted purchaser to enforce specific performance of a contract of sale against the owner he had made with the supposed agent; and *Held, further*, the fact that the supposed agent had advertised the sale of the lot without the owner's knowledge cannot vary the result.

APPEAL by defendant from *Ray, J.,* at June Term, 1924, of BUNCOMBE.

A trial by jury was waived by the parties. The controversy was submitted to the court upon a statement of facts agreed.

Defendant, Patrick Carr, is now, and has been for more than seventeen years, the owner of lot No. 74, on Charlotte Street in the city of Asheville, N. C. On 13 March, 1919, J. R. Law, a licensed real estate agent, residing and engaged in business in said city, under the name of J. R. Law Realty Company, submitted, for a customer, by letter to defendant then residing in Philadelphia, Pa., an offer for said lot of $3,000, advising defendant that the commission for making the sale was 5 per cent. Defendant declined this offer. In his letter, declining this offer, defendant stated that his price for the lot was $4,000, "terms to suit purchaser." Prior to this date, there had been correspondence between defendant and J. R. Law Realty Company in regard to business matters, but none relative to this lot. Patrick Carr had formerly resided in Asheville.

In August, 1919, defendant, replying to telegram from J. R. Law Realty Company, sent telegram to J. R. Law, as follows: "Your telegram received offering $3,500 cash for lot. Best price on same is $4,000, cash or time."

On 20 August, 1919, defendant, by letter, inquired of J. R. Law Realty Company if the offer of $3,500 was genuine, stating that the purpose of the inquiry was to obtain information to enable him to answer questionnaire, submitted to him, by the supervisor of Buncombe County, in connection with the assessment of said lot for taxation. In this letter defendant stated that he had owned the lot for more than seventeen years and that it had cost him more than $4,000. There was no other or further correspondence between defendant and said J. R. Law Realty Company until 7 April, 1920.

It is agreed "that the said Patrick Carr never withdrew the offer of sale, or changed the price upon said lot after said date and that the said J. R. Law continued to offer and advertise the said land for sale by placing 'For Sale' notices on same and by advertisements in the newspapers in the city of Asheville."

On 7 April, 1920, J. R. Law, as agent of defendant entered into a contract with John O'Donnell, plaintiff, to sell and convey the said lot to plaintiff for $4,000. J. R. Law executed and delivered to plaintiff a

receipt, in writing, for $100 paid to him by plaintiff, part of cash payment, as agreed upon, the terms of said contract being fully stated in said receipt. Thereupon J. R. Law Realty Company advised defendant, by letter, of the contract of sale, stating the terms in full, but not disclosing the name of the purchaser. Plaintiff soon thereafter tendered to defendant performance on his part of said contract and demanded performance by defendant. Defendant refused to comply with said contract, denying that he had authorized J. R. Law Realty Company to make or enter into same.

Judgment was rendered in favor of plaintiff, and a decree was signed, directing defendant, upon payment by plaintiff of purchase price, in accordance with contract, to execute and deliver to plaintiff a good and sufficient deed, conveying said lot to plaintiff. Defendant excepted to said judgment and appealed therefrom to the Supreme Court. The only assignment of error is based upon this exception and presents the question whether or not there was a contract between plaintiff and defendant by which defendant had contracted to convey the said lot to plaintiff.

*J. E. Swain, R. M. Wells and Mark W. Brown for plaintiff.*
*Zeb V. Curtis and Merrimon, Adams & Johnston for defendant.*

CONNOR, J. This is a civil action to enforce by decree of specific performance a contract to convey land. It is not contended that defendant, personally, entered into the contract, which plaintiff seeks to have thus enforced. Plaintiff contends that the contract was made, on behalf of defendant, by a real estate agent, under authority conferred upon him by defendant. Defendant admits that the real estate agent made the contract, in form, as contended by plaintiff, but denies that the said agent was authorized by him, to sell his lot or to bind him, by contract, to convey the same to plaintiff.

The facts are not in controversy. Defendant, residing in the city of Philadelphia, owned a lot of land, situate in Asheville, N. C. A real estate agent, engaged in business in Asheville, submitted to defendant, in Philadelphia, for customers, two offers for said lot, one, by letter, in March, 1919, of $3,000, and one by telegram, in August, 1919, of $3,500. The lot was not listed by defendant for sale with the said real estate agent, at the time either of said offers were submitted. Both were declined by defendant. In his letter and in his telegram, declining these offers, defendant stated to said agent that his best price for said lot was $4,000. Soon after the second offer, on 20 August, 1919, defendant wrote the agent, inquiring whether the offer of $3,500 was genuine, stating that the purpose of the inquiry was to secure informa-

tion to enable defendant to answer a questionnaire submitted by the supervisor of Buncombe County in connection with the assessment of said lot for taxation. These are the only communications which defendant had with the said agent, relative to the said lot, prior to 7 April, 1920, when said real estate agent, assuming to act as agent for defendant, made the contract with plaintiff, for the enforcement of which this action was brought. Unless the relation of principal and agent, with respect to the sale and conveyance of said lot, existed between defendant and said real estate agent, at said date, plaintiff can in no event recover, and it becomes needless to consider the other interesting questions discussed in the argument and in the briefs, upon this appeal.

The burden of establishing the relation of principal and agent between defendant and said real estate agent is upon plaintiff. The relation can arise only from a contract between the parties, express or implied. The statement of facts agreed does not disclose any express contract, by which defendant employed or authorized the real estate agent to sell his lot. The law will not imply such a contract unless the same is clearly established by the facts as they appear in the statement agreed upon by the parties.

The real estate agent, upon his own initiative, and without any request from defendant, submitted for his customers, offers for the lot. These offers were promptly declined by defendant. Defendant, in his letter and in his telegram, declining these offers, stated to the agent that his best price was $4,000. The real estate agent had not inquired whether defendant wished to sell his lot or at what price he would sell same. The statement of defendant that $4,000 was his best price on his lot did not necessarily mean that defendant was willing to sell at that price; it may be construed as an explanation of defendant's refusal to accept either of the offers made by the real estate agent for his customers. It cannot be construed as authorizing the agent to sell the lot at that price. "A mere statement, or answer to an inquiry, by an owner of land, that he will take a certain sum for it is not sufficient to authorize the person to whom the statement is made to act as agent for its sale." 2 C. J., 610. *Smith v. Brown,* 132 N. C., 365.

It is agreed that defendant did not withdraw the offer of sale or change the price on the lot, between the dates of submission by the agent of the offers for the lot, and the date of the contract by the agent and plaintiff. It is also agreed that the agent continued to advertise the lot for sale. There is no evidence, however, and no facts agreed from which it can be inferred that defendant knew that the agent was advertising his lot for sale. The mere advertising of defendant's lot for sale, either in newspapers, or by signs placed upon the lot, by the real

estate agent, certainly with the knowledge of defendant, is not evidence that the relation of principal and agent existed between them, with authority to the agent not only to sell, but also to bind defendant by a contract to convey his lot. Defendant, having declined the offers for the lot, and having received no further communications from the agent, was under no obligation to communicate further with the agent with respect to said lot.

"An agent's authority to sell real estate is not to be readily inferred, but exists only where the intention of the principal to give such authority is plainly manifest." 2 C. J., 609. Even if defendant had listed his lot with the real estate agent for sale, and named the best price which he would take for the lot, nothing else appearing, the authority of the real estate agent would have been limited to finding a purchaser, ready, willing and able to enter into contract with the principal upon the terms specified by or acceptable to the principal. In the absence of special authority, the agent could not bind his principal by a contract to convey to a purchaser. 9 C. J., 526.

The real estate agent was not authorized to make the contract which plaintiff seeks to enforce. The exception to the judgment is well taken and the same must be

Reversed.