SECURITY NATIONAL BANK (TARBORO UNIT), ADMINISTRATOR D. B. N. OF W. R. TOLSTON, SUCCESSOR TO NORTH CAROLINA BANK AND TRUST COMPANY (TARBORO UNIT), ADMINISTRATOR D. B. N. OF W. R. TOLSTON, DECEASED, v. H. C. BRIDGERS, W. E. COBB, J. V. COBB, W. L. LANE, W. E. PHILLIPS, W. H. PHILLIPS, A. J. WALSTON, J. R. WALSTON, AND G. H. WEBB, DIRECTORS OF THE PINETOPS BANKING COMPANY.

(Filed 10 October, 1934.)

**1. Executors and Administrators A b—**

The appointment of a bank as administrator cannot be attacked in an action against the directors of the bank to recover losses sustained to the estate by alleged gross neglect and mismanagement of the bank by the directors.

**2. Banks and Banking C c: H e—**

   The relation of debtor and creditor exists between a depositor and the bank of deposit, which relation, upon the death of the depositor, exists between the bank and the depositor's estate, and this relation is not changed by the appointment of the bank as administrator where the deposit is co-mingled with other funds of the bank.

**3. Executors and Administrators F a—Administrator may refuse to distribute estate prior to expiration of one year from appointment.**

   A bank, acting as administrator, has a legal right to hold the funds of the estate and to refuse to settle the estate and distribute it to the heirs upon their demand prior to the expiration of one year from the appointment of the bank as administrator, C. S., 101, 109, 147. In this case demand was made shortly before the bank was placed in liquidation, but it appeared that the bank was solvent on the date it was appointed administrator, and there was evidence that it was solvent a few months before being placed in liquidation, and that it was placed in liquidation in less than a year after its appointment as administrator.

**4. Executors and Administrators A a—There is presumption of compliance with statutes in licensing bank to act as administrator.**

   There is a presumption that the Insurance Commissioner has complied with the statutes in licensing a bank to act as administrator, and where there is evidence that a bank, on the date it was appointed administrator, was solvent in an amount in excess of $100,000, the contention of an administrator *d. b. n.* appointed upon the bank's insolvency that the bank had not complied with the provisions of C. S., 6376, 6377, 6378, 6379, cannot be sustained.

**5. Corporations C c—**

   The directors of a corporation may be held personally liable for gross neglect of their duties, mismanagement, fraud and deceit resulting in loss to a third person, but not for errors of judgment made in good faith.

**6. Banks and Banking H b—Evidence held insufficient to hold directors liable to administrator d. b. n. for loss alleged to have resulted from directors' gross neglect and mismanagement of bank.**

   This action was instituted by an administrator *d. b. n.*, appointed upon the insolvency of a bank which had been appointed, and had acted as administrator of the estate prior to its insolvency, and was instituted against the directors of the bank upon allegations of gross neglect of their duties and mismanagement of the bank in that they knew or should have known that the funds of the estate had been co-mingled with the general assets of the bank without being properly secured with bonds or collateral, and in that they refused to close up the estate because they knew the bank was in imminent danger of insolvency and the withdrawal of the funds would force it to close its doors. The evidence was to the effect that the bank had been licensed to act as administrator and at the time of its appointment was solvent in excess of $100,000, and that the bank was solvent a few months prior to being placed in liquidation, and that it was placed in liquidation prior to the expiration of one year from its appointment as administrator: *Held*, the evidence was insufficient to bring the directors to an accountability under the law, and their motion as of nonsuit was properly granted.

BANK v. BRIDGERS.

APPEAL by plaintiff from *Moore, J.,* at June Term, 1934, of EDGE-COMBE. Affirmed.

This action was originally instituted by the North Carolina Bank and Trust Company, Tarboro Unit, administrator *d. b. n.* of W. R. Tolston, but during the pendency of the action the North Carolina Bank and Trust Company was placed in the hands of a liquidating agent and dismissed as such administrator, and the Security National Bank was appointed and qualified in its place and stead. The said Security National Bank was made party plaintiff by consent of all parties and was permitted to adopt the pleadings theretofore filed by the said North Carolina Bank and Trust Company.

This is an action brought by plaintiff against the defendants, directors of the Pinetops Banking Company, to recover a certain sum of money, on account of gross neglect of their duties and the mismanagement of the bank in reference to the administration of the estate of W. R. Tolston.

The material parts of the complaint allege: "That as this plaintiff is informed and believes and it so alleges upon information and belief, said officers refused and declined to close up said estate for that they realized that said bank was then and there insolvent, or in imminent danger of insolvency, and that if said sum of $13,650.26 should be paid out, that said bank could no longer function as a banking institution and must necessarily close its doors. . . . That said loss was proximately caused, brought about, and produced by the aforesaid negligent, careless, wrongful, and tortious acts of said defendants in refusing to wind up, discharge, and liquidate said estate after demand upon them so to do had been made, and after they well knew that said estate was in perfect condition to be settled up, all of which negligent refusal on the part of said defendants was, as hereinbefore alleged, induced, brought about, and caused by the wrongful desire on the part of said defendants to utilize the funds of said estate for purposes tending to serve the ends of said Pinetops Banking Company, to wit, to tide over and carry on said bank in the hope that it could continue in the function of a banking institution. . . . That the defendants in this action breached their duty to the estate this plaintiff represents in that said directors and executive officers and directors, approved, permitted and sanctioned the aforesaid acts on the part of said bank in the co-mingling of said funds, in the failure to set same up as a separate and distinct trust fund, and in the failure to have same properly secured by bonds or collateral as required by law, or legal banking regulations, or in the event same was not expressly sanctioned and approved by said defendants, that it was the duty of said defendants to have knowledge of said conditions complained of and to have prevented the aforesaid failure of duty on the part of the

bank that they represented. . . . That this plaintiff, prior to the institution of this action, made claim upon the liquidating agent of the Pinetops Banking Company and upon the Commissioner of Banks that this plaintiff's claim be allowed as a preferred claim, which demand and request has been declined. That prior to the institution of this action the plaintiff herein has made demand upon the liquidating agent of the Pinetops Banking Company that such liquidating agent institute this action against the defendants herein, which said demand was made in writing and which demand has been declined."

In answer, the defendants denied the material allegations of the complaint, and say: "That in the entire administration of its affairs the Pinetops Banking Company, as administrator of the estate of W. R. Tolston, has exercised due and proper care and caution, has honestly and faithfully executed the duties of its trusts, and has done all things required of it by law and equity in the performance of its said duties. That as these defendants are advised, believe and allege, the Pinetops Banking Company is now and was at the time of the appointment of its liquidating agent fully and amply solvent, and upon final settlement will pay the plaintiff, together with all other creditors, the full amount which is due them."

A judgment of nonsuit was rendered in the court below. The plaintiff excepted, assigned error, and appealed to the Supreme Court. The necessary facts will be set forth in the opinion.

*C. H. Leggett and George M. Fountain for plaintiff.*
*Henry C. Bourne, Gilliam & Bond, and H. H. Phillips for defendants.*

CLARKSON, J. At the close of plaintiff's evidence the defendants, in the court below, made a motion as in case of nonsuit. C. S., 567. The court below sustained the motion and in this we can see no error.

The evidence was to the effect that on 10 June, 1930, the Pinetops Banking Company was appointed administrator of the estate of W. R. Tolston. The following are the heirs at law and distributees: Thomas L. Tolston, Mrs. W. D. Wooten, and Mrs. J. E. Brown. The estimated value of the estate was $20,000. Renunciation of the heirs at law and request that the Pinetops Banking Company be appointed in their stead is as follows: "We, the undersigned, do hereby renounce our right to qualify upon the estate of W. R. Tolston, deceased, and respectfully ask that you appoint the Pinetops Banking Company in our place and stead. This 10 June, 1930. Thos. L. Tolston, Mrs. W. D. Wooten, Mrs. J. E. Brown."

The clerk of the Superior Court for Edgecombe County, North Carolina, plaintiff's witness, testified in part: "The Pinetops Banking Company qualified as administrator of W. R. Tolston's estate before me."

The question of "purported administrator" is not borne out by the record—if it were, it would be immaterial. The plaintiff in this action in the Superior Court cannot attack the appointment of the bank as administrator, under the facts herein disclosed. *Holmes v. Wharton,* 194 N. C., 470; *In re Estate of Styers,* 202 N. C., 715. The clerk can recall letters of administration when they have been improvidently granted. *In re Meadows,* 185 N. C., 99.

The Pinetops Banking Company had been in process of liquidation since 21 April, 1931. The bank went into liquidation in less than one year from its qualification as administrator. It was in evidence that W. R. Tolston died on or about 21 May, 1930, and had in the savings account of the bank $13,650.26 when the bank went into liquidation. In the checking account of the Pinetops Banking Company, administrator of W. R. Tolston, there was $1,254.78. The total balance of both accounts in favor of the Tolston estate was $14,905.04.

With respect to this money in the Pinetops Banking Company, if it had not been appointed administrator, the relation of W. R. Tolston and the bank was that of debtor and creditor. If it was appointed administrator and deposited the money in its bank, the same relation would apply. *Roebuck v. Surety Co.,* 200 N. C., 196; *In re Trust Co.,* 204 N. C., 791.

The Pinetops Banking Company, being the administrator, had certain rights and duties. C. S., 101, provides if claim not presented in twelve months, representatives discharged as to assets paid. C. S., 109, provides that the final account can be compelled to be filed "at any time after two years from his qualification." C. S., 147, provides that legacy or distributive share may be recovered from executor, administrator or collector "at any time after the lapse of two years from his qualifications."

The defendants were in their legal rights under the above statutes, in holding the money—under the facts and circumstances of this case.

S. B. Kittrell, plaintiff's witness, testified as to the solvency of the bank on 10 June, 1930, when the bank was appointed administrator: "The total assets of the Pinetops Banking Company on 10 June, 1930, was $423,765.40. The total liabilities, exclusive of capital, surplus and undivided profits, as I figure it, was $318,068.34. On 2 January, 1931, working out the same figures, the total liabilities, exclusive of capital, surplus and undivided profits was $296,953.50, and the assets on that date was $340,371.44. This book does not include liabilities and assets and surplus carried on the branch at Hookerton." Of course, the stockholders were liable to be assessed if the bank became insolvent. This was an additional asset.

The further contention is made by plaintiff that C. S., 6376, 6377, 6378, and 6379, were not complied with. The Pinetops Banking Com-

pany, when complying with these provisions, had a right to act in certain fiduciary capacities, such as administrator, etc. C. S., 6379, reads as follows: "After any such corporation has been licensed by the commissioner, the certificate of the commissioner that it has been admitted to do business in the State and is licensed by the Insurance Commissioner and is solvent to an amount not less than one hundred thousand dollars, shall be, until revoked by him, equivalent to the justification of sureties, and full evidence of its authority to give such bonds or undertakings. There shall be no charge for the seal of this certificate." C. S., 6378, provides that the commissioner shall examine into the solvency of the corporation applying for license to do business.

It will be noted that the above act (6379) says "is solvent to an amount not less than $100,000." The evidence is that on 10 June, 1930, the total assets were $423,765.40 and the total liabilities, exclusive of capital, surplus and undivided profits, was $318,068.34. This shows that the assets over liabilities were over $100,000. It is further noted that the capital stock was $50,000, its surplus $40,000, the Hookerton Branch had a surplus of $10,000. This would make total capital and surplus of $100,000. The presumption is that the commissioner, who had the authority, complied with the law when the bank was licensed to act as administrator.

It was said in *Caldwell v. Bates,* 118 N. C., 323 (325): "That the directors are liable for gross neglect of their duties, and mismanagement—though not for errors of judgment made in good faith—as well as for fraud and deceit." *Minnis v. Sharpe,* 198 N. C., 364; *S. c.,* 202 N. C., 300.

The principle of law as above written is safe, sane, and salutary, and we adhere to same in the present action. The plaintiff's evidence is not sufficient to bring defendants to an accountability under the law and the nonsuit was properly granted in the court below.

The judgment of the court below is

Affirmed.