F-F MILLING CO., INC. v. GUY SUTTON

No. 708SC246

(Filed 5 August 1970)

1. **Corporations § 13— liability of directors to third persons — fraud — good faith judgment**

   A corporation's directors may be held personally liable for gross neglect of their duties, mismanagement, fraud and deceit resulting in loss to a third person, but not for errors of judgment made in good faith.

2. **Corporations § 13— action to recover price of goods sold to corporation — liability of officer**

   In a milling company's action to recover the purchase price of corn sold to a grain hauling firm, the milling company's evidence was insufficient to hold the defendant, an official of the hauling firm, personally liable for the purchase price on the ground that the defendant had wrongfully and fraudulently cashed five personal checks on the hauling firm and that the cashing of these checks resulted in the plaintiff's check from the firm being returned for insufficient funds, since the defendant had an agreement with the hauling firm to hold the personal checks until the firm was solvent, and since the firm had sufficient funds to pay the checks when the defendant presented them for payment.

3. **Corporations § 13; Principal and Agent § 4— corporation as agent of officer — action to recover purchase price of goods — proof of agency**

   In a milling company's action to recover the purchase price of corn sold to a grain hauling firm, the milling company's evidence was insufficient to raise an inference that the hauling firm purchased the corn as the agent of the defendant, who was an official of the company, and that the defendant was personally liable to the milling company as a principal.

APPEAL from *Hubbard, J.,* October 1969 Session of GREENE County Superior Court.

This is a civil action instituted by the plaintiff, F-F Milling Co. (Milling), to recover the purchase price of corn sold to defendants, Kermit Tugwell, B. F. Wood, Wood & Tugwell Transport & Trading Co., Inc., and Guy Sutton. At the conclusion of plaintiff's evidence the defendants Sutton and Tugwell moved for judgment as of nonsuit as to (1) fraud and conspiracy, and (2) agency. Judge Hubbard treated the complaint as setting up a cause of action for (1) misconduct on the part of the officers and directors, and (2) agency, and granted the defendant's motion for judgment as of nonsuit as to misconduct and denied the motion as to agency. Following the completion of the defendants' evidence the plaintiff took a voluntary nonsuit as to all parties except the defendant Sutton. Sutton renewed his motion for judgment as of nonsuit at the end of all the evidence, which motion was granted. From the granting of defendant Sutton's motion for judgment as of nonsuit, the plaintiff appealed to the Court of Appeals.

*Lewis and Rouse, by Robert D. Rouse, Jr., for the plaintiff appellant.*

*H. Horton Rountree, and Bridgers and Horton by Marvin V. Horton, Fountain and Goodwyn by George A. Goodwyn for the defendant appellee.*

HEDRICK, J.

The appellant contends that the court below committed error in allowing the defendant Sutton's motion for judgment as of nonsuit. The evidence at the trial tended to show the following facts: In 1962 Tugwell and Wood organized a partnership to engage in the business of trucking and hauling grain. In 1964 the partnership was incorporated with the original shareholders of stock being Tugwell, Wood and Joyce Tugwell, sister of Wood. In 1965 Sutton acquired a one-third interest in the

corporation which interest was increased to 51% in March of 1966 when he purchased the operating rights to the business for $9,000.00. Sutton also provided the corporation with additional funds in the amount of $11,900.00. As evidence of this indebtedness, the corporation gave Sutton five checks totaling $11,900.00. Tugwell became president of the corporation at its inception and remained as president of the corporation until 1967 when Sutton became president after the corporation went out of business.

C. K. Tugwell testified that during the fall of 1966 most of the deliveries for storage were to Fred Webb, Inc., in the name of Guy Sutton. When Sutton received the bonded receipt he would deposit the funds in the corporation account at the First National Bank of Eastern North Carolina at Farmville, mail the deposit slips to the corporation and the corporation would then pay F-F Milling Company. He testified that the corporation had been doing business with F-F Milling Company on a continuous basis since 1962. After identifying several checks to the plaintiff and others which were written by the corporation, Tugwell stated:

"I would characterize the course of dealing of Wood & Tugwell in the purchase of the grain represented by these checks as being in the normal course of business."

In early November 1966 Sutton, while a stockholder and a director of the corporation, cashed the five checks totaling $11,900.00 which he held from the corporation. The corporation's bank statement shows that these five checks cleared the corporation bank account on 7 November 1966. On 23 November 1966 the plaintiff received a check from the corporation in the amount of $14,472.34 which was deposited in their account with Wachovia Bank & Trust Company the same day. This check was subsequently returned to the plaintiff because of insufficient funds in the corporation's account.

Soon after this, an action was brought by one of the creditors of the corporation to have the corporation declared a bankrupt. After the initiation of the bankruptcy proceedings, Sutton agreed to put $11,900.00, the amount of the five checks, into the company in order to have the bankruptcy proceedings dismissed. Creditors of the corporation received 40% of their claims against the corporation with the plaintiff receiving $5,747.42.

The plaintiff contends that the action of the defendant Sutton in cashing the five checks from the corporation which he had held for several months was the cause of the loss suffered by the plaintiff when the corporation's check to the plaintiff in the amount of $14,472.34 was returned and not paid. The plaintiff further contends that Sutton's cashing the five checks constituted a breach of his agreement with the corporation to hold the checks, and was the cause of the insolvency of the corporation.

The bank statement for the corporation shows that on 7 November 1966, when Sutton cashed his five checks, the corporation had a balance of $9,919.45. The plaintiff received its check for $14,472.34 on 23 November 1966 and immediately deposited it in its account with Wachovia Bank and Trust Company. The check cleared the Federal Reserve Bank on 23 November 1966 and was then returned to the First National Bank of Eastern North Carolina at Farmville. The bank statement shows that the corporation's balance was as follows: (1) 25 November 1966, $253.47; and (2) 28 November 1966, $109.32. The evidence also reveals that on 11 November 1966 the corporation was indebted to F-F Milling Company in the amount of $29,134.27. On 14 November 1966 the plaintiff received a check from the corporation in the amount of $15,000.00 as partial payment of this balance. This check cleared the corporation's bank account on 17 November 1966.

[1, 2] In North Carolina a corporation's directors may be held personally liable for gross neglect of their duties, mismanagement, fraud and deceit resulting in loss to a third person, but not for errors of judgment made in good faith. *Bank v. Bridgers*, 207 N.C. 91, 176 S.E. 295 (1934); *Minnis v. Sharpe*, 198 N.C. 864, 151 S.E. 735, 202 N.C. 300, 162 S.E. 606, mod. on rearg. on other grounds 203 N.C. 110, 164 S.E. 625 (1932). We do not believe the plaintiff in the present case has shown sufficient facts to hold the defendant personally liable for the purchase price of the corn purchased by the corporation. The evidence does not disclose any bad faith on the part of the defendant nor does it disclose any fraud or misconduct on his part. The agreement between Sutton and the corporation was to the effect that Sutton would not cash the checks until the corporation was solvent. On the day the checks were cashed the bank statement shows a deposit in the amount of $31,428.03 and a balance left of $9,919.45. Between 7 November 1966 and 28 November 1966,

the earliest date the check to the plaintiff could have been received at the bank in Farmville, the statement reveals deposits totaling $92,518.10. The evidence is also clear that between 7 November 1966, the date of the alleged misconduct, and 28 November 1966 the plaintiff deposited a check from the corporation for $15,000.00 and that this check cleared the corporation's bank account. The evidence disclosed that when Sutton presented the five checks for payment there were sufficient funds in the corporation's account to pay them.

[3]   The plaintiff further contends that the evidence was sufficient to raise an inference that the corporation purchased the corn from the plaintiff as the agent of the defendant Sutton, and that Sutton was liable to the plaintiff for the purchase price of the corn as a principal. We do not agree.

In *Simmons v. Morton,* 1 N.C. App. 308, 161 S.E. 2d 222 (1968), this Court set forth the standard to be used in proving agency as follows:

" 'The plaintiff has the burden of proving that a particular person was at the time acting as a servant or agent of the defendant. An agent's authority to bind his principal cannot be shown by the agent's acts or declarations. This can be shown only by proof that the principal authorized the acts to be done or that, after they were done, he ratified them.' Lee, N. C. Law of Agency and Partnership, § 20. One who seeks to enforce against an alleged principal a contract made by an alleged agent has the burden of proving the existence of the agency and the authority of the agent to bind the principal by such contract. *Supply Co. v. Hight,* 268 N.C. 572, 151 S.E. 2d 50; *O'Donnel v. Carr,* 189 N.C. 77, 126 S.E. 112. . . ."

A careful examination of the evidence in the present case shows that the plaintiff has failed to carry the burden of proof on the question of agency.   Indeed, the evidence has disclosed merely that it was dealing with the corporation as it had dealt with the corporation in the normal course of business since 1962.

Having considered all of the evidence in its light most favorable to the plaintiff, it is our opinion that the judgment of nonsuit ought to be affirmed.

Affirmed.

BROCK and BRITT, JJ., concur.