OBERLIN CAPITAL, L.P. v. SLAVIN, et al., 2000 NCBC 6

| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| COUNTY OF WAKE | 99-CVS-03447 |

| | |
|---|---|
| OBERLIN CAPITAL, L.P.<br><br>Plaintiff,<br><br>vs.<br><br>EDWARD W. SLAVIN, Individually, BETTINA K. SLAVIN, Individually, JOSEPH J. FINN-EGAN, Individually, JEFFREY A. LIPKIN, Individually,<br><br>Defendants. | ORDER AND OPINION |

{1}   This matter comes before the Court on defendants' motions to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.  The central issue raised by the motions is the extent to which individual directors of a company may be liable for the wrongdoing of other corporate agents or the corporation in the absence of their own participation in the alleged wrong.  For the reasons stated below, this Court finds that such liability cannot be based solely on an individual's capacity as a director.  However, a claim may be asserted against a company's officer/director who actively participated in the commission of a tort while negotiating a contract on behalf of the company.  Accordingly, the Complaint does state a cause of action against Edward W. Slavin; however, the claims asserted against Bettina K. Slavin, Joseph J. Finn-Egan and Jeffrey A. Lipkin are dismissed.

*Franch, Jarashow, Burgmeier & Smith, P.A., by Frank T. Laznovsky, and Smith, Debnam, Narron, Wyche, Story & Myers, L.L.P., by Kevin L. Sink, for Oberlin Capital, L.P.*

*Underwood Kinsey Warren & Tucker, P.A., by Richard L. Farley, for Joseph J. Finn-Egan and Jeffrey A. Lipkin.*

*Bode, Call & Stroupe, L.L.P., by Odes L. Stroupe, Jr., for Edward W. Slavin and Bettina K. Slavin.*

**I.**

{2}   The plaintiff, Oberlin Capital, L.P. ("Oberlin"), is a creditor of Express Parts Warehouse, Inc. ("EPW"), a corporation currently in bankruptcy.  Oberlin has sued the directors of EPW, alleging that they are personally liable to Oberlin for losses incurred by Oberlin in connection with a loan to EPW.

Oberlin's claims are premised upon its contention that the individual directors of EPW had an independent duty to Oberlin, a potential creditor, to disclose certain events relating to EPW's operations, which events occurred prior to any communication by EPW with Oberlin regarding the potential loan at issue. The plaintiff alleges the following facts which, for the purposes of this motion, will be treated as true.

{3} EPW was a wholesale distributor of automotive parts, specializing in brakes, cooling and undercar systems. From May 23, 1997 through August 27, 1997, Edward W. Slavin ("Mr. Slavin"), Bettina K. Slavin ("Mrs. Slavin"), Joseph J. Finn-Egan ("Finn-Egan") and Jeffrey A. Lipkin ("Lipkin") constituted the entire board of directors of EPW. Finn-Egan and Lipkin are residents of California. The Slavins are residents of North Carolina. The principal offices and place of business of EPW were in Wake County, North Carolina.

{4} On May 23, 1997, EPW consummated an asset purchase from the Chapter 11 bankruptcy estate of Reddi-Brake which resulted in the expansion of EPW operating locations. Plaintiff alleges that prior to the closing of the Reddi-Brake Chapter 11 asset purchase, EPW had an agreement with one of its suppliers, Echlin/Raybestos, that Echlin/Raybestos accept back from EPW $1.5 million per quarter of brake parts, which were obtained out of the Chapter 11 asset sale, and provide EPW a like amount of new parts for sale. However, by July 1, 1997, Echlin/Raybestos had reneged on its alleged agreement, and instead granted EPW a $300,000 operating line of credit, thus resulting in the loss of anticipated new inventory/working capital.

{5} In July, 1997, after the Echlin/Raybestos deal had changed, EPW began negotiations with Oberlin for a loan for the purpose of obtaining working capital to meet a short-term cash flow problem. Oberlin is licensed by the Small Business Administration as a Small Business Investment Company and engages in the business of making subordinated loans to small businesses. (Compl. ¶ 20.) The negotiations with Oberlin were conducted by Ed Slavin on behalf of EPW. Plaintiff alleges that during the negotiations, Ed Slavin did not disclose to Oberlin that the then current Echlin/Raybestos arrangement had changed from the arrangement EPW had originally negotiated. Only the current arrangement was disclosed. Plaintiff further alleges that during the negotiation period, all of the directors knew that the original agreement with Echlin/Raybestos had fallen through and had been replaced by the new operating line of credit. There are no allegations that EPW misrepresented the actual state of its relationship with Echlin/Raybestos in July of 1997.

{6} On August 27, 1997, EPW and Oberlin closed a transaction whereby Oberlin loaned to Express Parts the sum of $1.5 million (the "Oberlin Loan"). In connection with the Oberlin Loan,

Oberlin also acquired the right to purchase stock in EPW, a close corporation. Specifically, EPW issued to Oberlin a Stock Purchase Warrant which entitled Oberlin to purchase up to 199.91 of Class B Common Stock upon exercise of the warrant. The Oberlin Loan was memorialized in a Loan and Security Agreement (the "Agreement"), dated August 27, 1997, which provided as follows:

> 3.25 <u>Statements Not False or Misleading</u>. Borrower [EPW] has fully advised Lender [Oberlin] of all material matters involving borrower's financial condition, operation, properties or industry that management of Borrower reasonably expects might have a material adverse effect on Borrower. No representation or warranty given as of the date hereof by Borrower contained in this agreement or any schedule attached hereto or any statement in any document, certificate or other instrument furnished or to be furnished to lender pursuant hereto, taken as a whole contains or will (as of Closing) contain any untrue statement of a material fact, or omits or will (as of Closing) omit to state any material fact that is necessary in order to make the statements contained therein not misleading.[fn1]

The agreement further stated that Oberlin was familiar with this type of transaction, was able to protect its own interests, and performed its own due diligence:

> 3.01 <u>Investment Intent</u>.
> (a)    The Lender has substantial experience in evaluating and investing in private placement transactions of securities in companies similar to Borrower so that Lender is capable of evaluating the merits and risks of its investment in the Borrower and has the capacity to protect its own interests;
>
> (b)    The Lender is acquiring the Debenture and the Warrant, and will acquire the shares underlying the Warrant, for investment in its own account . . . .
>
> (d)    The Lender has had an opportunity to discuss Borrower's business, management, and financial affairs with the Borrower's management and the opportunity to review the Borrower's facilities. The Lender has also had an opportunity to ask questions of the officers of the Borrower, which were answered to its satisfaction.

{7}    In January 1998 EPW filed a voluntary petition for Chapter 11 bankruptcy reorganization in the United States Bankruptcy Court, Eastern District of North Carolina, Raleigh Division. The Complaint alleges that in its disclosure statement filed with the United States Bankruptcy Court, EPW stated that its bankruptcy was precipitated by inadequate working capital resulting from Echlin/Raybestos reneging on its agreement with EPW. (Compl. ¶¶ 33-34.) Furthermore, the Complaint alleges that despite being aware that Echlin/Raybestos had reneged on its agreement and that this circumstance would have a material impact upon the financial viability of EPW, the directors failed to disclose such information to Oberlin. (Compl. ¶¶ 36-39, 42-43, 50-52.)

{8}    Oberlin brings this action against the EPW directors for the losses it sustained as a result of the loan transaction. Oberlin's claims are based on the directors' failure to disclose the facts surrounding the altered Echlin/Raybestos agreement. Oberlin does not allege any affirmative misrepresentation about the relationship change, but relies solely on an omission. It claims to have first discovered both

the fact of the change in the relationship and its materiality after EPW filed for bankruptcy.

## II.

{9}     When ruling on a motion to dismiss under Rule 12(b)(6), the court must determine "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted." *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987).   In ruling on a motion to dismiss, the court must treat the allegations in the complaint  as true.   *See Hyde v. Abbott Lab., Inc.*, 123 N.C. App. 572, 473 S.E.2d 680, 682 (1996).   The court must construe the complaint liberally and must not dismiss the complaint unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.   *See id.*   When considering a motion under Rule 12(b)(6), the court is not required to accept as true any conclusions of law or unwarranted deductions of fact in the complaint.   *Sutter v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970).   When the complaint fails to allege the substantive elements of some legally cognizable claim, or where it alleges facts which defeat any claim, the complaint should be dismissed under Rule 12(b) (6).   *See Hudson Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 511 S.E. 2d 309 (1999).   When applying this standard, it must be kept in mind that when fraud is alleged, the circumstances constituting fraud must be plead with particularity.   N.C. Rule Civ. Pro., Rule 9(b).   *See also Terry v. Terry*, 302 N.C. 71, 273 S.E. 2d 674 (1981).

## A.

{10}     Central to plaintiff's claims against the directors is the allegation that the directors had a duty to Oberlin to insure that EPW disclosed to Oberlin the facts surrounding the failed agreement with Echlin/Raybestos.   In North Carolina, the duties of directors are defined by statute.   Specifically, N.C.G.S. § 55-8-30(a)(3) provides that a corporate director must act in good faith, with ordinary care, and in a manner which he reasonably believes to be in the best interests of the corporation.   "The duties and liabilities of directors . . . run directly to the corporation and indirectly to its shareholders; they do not run to third parties, such as creditors."   Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 14-8, at 284 (5th ed. 1995).   Accordingly, a director has no fiduciary responsibility to creditors of the corporation.   *See* N.C.G.S. § 55-8-30 official commentary (1999).   "The directors or officers of a corporation are not liable for corporate acts and debts simply by reason of their official relation to the corporation."   18B Am. Jur. 2d *Corporations* § 1829 (1999).   In addition, the directors of a corporation are not guarantors of its solvency, and are not required to personally supervise the details of a corporation's business transactions.   *See Minnis v. Sharpe*, 202 N.C. 300, 162 S.E. 606 (1932); s*ee also* N.C.G.S. § 55-8-30(b) (director may rely upon information, reports, etc. from the corporation's officers).

{11}     The law makes it clear that directors do not owe a duty to outsiders.   "A director or officer of a

corporation does not incur personal liability for its torts merely by reason of his official character; he is not liable for torts committed by or for the corporation unless he has participated in the wrong." 18B Am. Jur. 2d *Corporations* § 1877 (1999). However, a director can be held directly liable to a third party for torts he personally committed. *See E.F. Milling Co., Inc. v. Sutton*, 9 N.C. App. 181, 184, 175 S.E.2d 746, 748 (1970). Thus, to the extent plaintiff can assert a direct tort claim against an individual director, it may hold her personally liable. Even so, the fact that one director committed a tort against a third party does not mean that third party may hold all the directors personally liable. For example, in *Minnis v. Sharpe*, an action for negligence was brought against the directors of Alamance Insurance and Real Estate Company ("the Company"). The plaintiffs alleged that the Company engaged in a fraudulent scheme of issuing multiple notes upon the same property. *Id.* at 302, 162 S.E. at 607. Furthermore, the plaintiffs argued that, although the defendants had not personally participated in the scheme, because the scheme had existed for several years, defendants should be charged with constructive notice of the fraudulent practice. *Id.* The court found that directors are not charged with notice by virtue of "desultory, occasional or disconnected acts of mismanagement or fraudulent transactions." *Id.* at 303, 162 S.E. at 607. Instead, a duty arises only in "cases where mismanagement and fraud has [sic] been persistently and continuously practiced for substantial periods of time." *Id.* Therefore, when an officer is appointed as an agent of a corporation, the directors must be able to rely on that officer to act in accordance with the obligations created by the agency. *Id. See also Myers & Chapman, Inc. v. Evans*, 89 N.C. App. 41, 47, 365 S.E.2d 202, 206, *aff'd in part, rev'd in part*, 323 N.C. 559, 374 S.E.2d 385 (1988).

{12}    Plaintiff asserts claims against the defendant directors for intentional fraud, general negligence, negligent misrepresentation, breach of fiduciary duty, unfair and deceptive trade practices, and punitive damages. A distinction must be made between Mr. Slavin, who, under the authority of the board, was actively engaged in the loan negotiations with Oberlin, and the other three defendants against whom the claims are asserted based solely on their roles as directors. Therefore, the Court will consider the validity of each claim as asserted against the directors as a whole ("board of directors"), and as asserted against Mr. Slavin individually.[fn2]

### 1.

{13}    Plaintiff's first claim purports to state a claim for fraud based on the allegation that all of the directors concealed material facts from Oberlin. In order for Oberlin to assert a claim for fraud against the board of directors, it must allege facts which show that: (a) there was "a definite and specific representation;" (b) the representation was materially false; (c) the representation was made with

knowledge of its falsity or in culpable ignorance of its truth; (d) it was made with fraudulent intent; (e) it was reasonably relied upon by the other party; and (f) there was actual loss flowing from the alleged misrepresentation. *Lillian Knitting Mills Co. v. Earle*, 237 N.C. 97, 74 S.E.2d 351 (1953). For purposes of this motion the Court assumes that Echlin/Raybestos reneging on its alleged earlier agreement was material. In North Carolina, an action for fraud may be based upon an affirmative misrepresentation of material fact, or upon a failure to disclose a material fact related to the transaction where the defendants had a duty to disclose. *See Harton v. Harton*, 81 N.C. App. 295, 344 S.E.2d 117 (1986). Thus, withholding information as to the financial condition of a corporation does not constitute actionable fraud in the absence of a duty to disclose. *See* 32 Am. Jur. 2d Fraud & Deceit, § 171; *See also Moore & Moore Drilling Co. v. E.F. White, Jr.*, 345 S.W.2d 550 (Tex App. 1961). The duty to disclose facts related to a transaction arises in only three circumstances: (1) where a fiduciary relationship exists between the parties, (2) where a party has taken affirmative steps to conceal material facts from the other, or (3) where one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and is unable to discover through reasonable diligence. *See Harton*, 81 N.C. App. at 297-98, 344 S.E.2d at 119.

{14} Turning first to the claim for fraudulent concealment as asserted against the board of directors, it is clear from the discussion of a director's duties below that no fiduciary relationship existed between Oberlin and the directors of EPW. In general, directors owe a duty to the corporation, not to third parties. Therefore, a fiduciary relationship may not be properly based upon defendants' roles as directors, or any general association they may have had as directors with Oberlin, a potential creditor. A fiduciary duty exists where there has been "a special confidence reposed in one who 'in equity and good conscience is bound to act in good faith and with due regard to the *interests* of the one reposing confidence.'" *Speck v. North Carolina Dairy Found.*, 311 N.C. 679, 685, 319 S.E.2d 139, 143 (1984) (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)). Here, plaintiff has failed to allege any specific facts upon which a fiduciary relationship between the board of directors and Oberlin may be based.

{15} In addition, Oberlin has not adequately alleged that the directors took affirmative steps to conceal any material fact. Instead, plaintiff has alleged in a conclusory manner that the directors "concealed, failed to disclose and otherwise hid" from Oberlin facts which Oberlin contends were material. Rule 9(b) of the North Carolina Rules of Civil Procedure provides that the circumstances of fraud must be alleged with particularity. Rule 9(b) requires plaintiff to specifically allege the time, place and content of the alleged fraudulent representation or concealment, and the identity of the person who concealed

the information. *See Terry v. Terry*, 302 N.C. 77, 84, 273 S.E.2d 674, 678 (1981). When alleging individual fraud of a director based upon representations contained in documents originating from the corporation, plaintiff must allege facts to demonstrate day-to-day involvement in the affairs of the business, or other specific facts that "provide a 'tie-in' between the defendant and the [corporate] documents, such as 'to give rise to an inference of knowledge, intent or reckless disregard.'" *Andrews v. Fitzgerald*, 823 F. Supp. 356, 374 (M.D.N.C. 1993). Conclusory allegations that a defendant acted in conspiracy with others are insufficiently specific to meet the requirements of Rule 9(b). *See id.*

{16} In this case, plaintiff has made no allegations of involvement by the directors in the day-to-day affairs of EPW or the negotiations between Mr. Slavin and Oberlin, and has alleged only in conclusory fashion that all of the directors "actively and personally participated in the decision to conceal." (Compl. ¶¶ 50-52). Plaintiff has not attributed any specific acts to any specific defendant and has not alleged the time, place, method or means by which each individual defendant actively and personally participated in a plan to conceal the information from plaintiff. In order to satisfy Rule 9, plaintiff must, at the very least, identify the specific individuals who concealed facts as part of a fraudulent scheme and describe their specific actions in doing so. *See Coley v. North Carolina Nat'l Bank*, 41 N.C. App. 121, 254 S.E.2d 217 (1979). All plaintiff has really alleged is that (1) the agreement between EPW and Echlin/Raybestos had changed, (2) EPW's directors were aware of the change, and (3) no one from EPW volunteered the information to Oberlin. These facts do not state a claim for active concealment against the directors.

{17} Finally, in support of its claim for fraudulent concealment, plaintiff contends that Echlin/Raybestos' alleged termination of its agreement two months before plaintiff closed the Oberlin Loan constituted a "latent defect" in the subject matter of the Oberlin Loan. For there to be a claim of fraud based on the failure to disclose a "latent defect" in the transaction, the defect must be such that Oberlin could not discover it through its own reasonable diligence. *See Harton*, 81 N.C. App. at 298, 344 S.E.2d at 119. Further, when a fraud claim is based upon failure to disclose a latent defect, Rule 9(b) requires that the complaint allege that the plaintiff was denied any opportunity to investigate, or that it could not have discovered the allegedly concealed facts by exercise of its own reasonable diligence. *See Rosenthal v. Perkin*, 42 N.C. App. 449, 452, 257 S.E. 2d 63, 66 (1979).

{18} Oberlin has not plead any facts from which one can infer that Oberlin could not have discovered the true status of EPW's credit with Echlin/Raybestos. Furthermore, Oberlin does not allege any actions by the board of directors which were calculated to prevent Oberlin from discovering the alleged concealed facts. Indeed, Oberlin affirmatively acknowledged in the Agreement that it asked

questions directly of EPW's officers, that it was satisfied with the responses it obtained, that it was familiar with the type of transaction at issue, and that it had the capacity to protect its own interests. (Agreement, Article IIIA, § 3.01.) Thus, plaintiff cannot properly base its allegation that the board of directors had a duty to disclose upon a latent defect theory.

{19} Plaintiff has failed to establish (1) a fiduciary relationship between the parties, (2) affirmative acts of concealment, or (3) knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and is unable to discover through reasonable diligence. Therefore, there is no basis upon which this Court could find a duty on the part of the board of directors as a group to disclose the facts surrounding the altered Echlin/Raybestos agreement. A claim for fraudulent concealment must fail in the absence of a duty to disclose. Accordingly, the claim for fraudulent concealment as asserted against Mrs. Slavin, Finn-Egan and Lipkin is dismissed.

{20} Next, this Court must consider the claim of fraudulent concealment as asserted against Mr. Slavin. This Court has determined that there is no general fiduciary relationship between directors and a corporation's creditor. Thus, in order to establish a duty based on a fiduciary relationship, plaintiff must plead facts which support the allegation that Oberlin placed special trust and confidence in Mr. Slavin. Not only did plaintiff fail to plead that Oberlin placed special trust and confidence in Mr. Slavin, the Complaint contains no facts which would support such a special relationship. The allegation that Mr. Slavin had full authority to negotiate the transaction alone does not establish a confidential relationship between him and Oberlin.

{21} For the same reasons that plaintiff cannot support a claim for fraudulent concealment against the board of directors based on latent defect theory, the claim also fails when asserted against Mr. Slavin. Plaintiff did not particularly plead facts which support such a theory. As stated above, plaintiff failed to allege that it could not have discovered the true status of EPW's credit with Echlin/Raybestos, or that it was prevented from making any inquiries into EPW's financial situation.

{22} The final basis for a duty to disclose – an allegation that a party took affirmative steps to conceal – is properly pled as against Mr. Slavin. The Complaint alleges that Mr. Slavin played an active role in the negotiations with Oberlin. The Complaint further alleges that the loan agreement (1) provided that the "Borrower (Express Parts) has fully advised Lender (Oberlin) of all material matters involving Borrower's financial condition," and (2) prohibited the borrower from failing to state any material fact. (Agreement ¶ 3.2.5.) In addition, the Complaint alleges that during the time of the negotiations with Oberlin, Mr. Slavin was aware that Echlin/Raybestos had reneged on its agreement with EPW, and that this would have a "material negative impact upon the financial condition and viability of

[EPW]." (Compl. ¶ 37.) The allegation that Mr. Slavin was actively involved in the negotiations, together with the allegation that Mr. Slavin, despite the fact that he was aware of the material nature of this information, failed to disclose that the agreement with Echlin/Raybestos had failed, support the assertion that Mr. Slavin took affirmative steps to conceal this information. *See Feldbaum v. McCrory Corp.*, No. 12006, 1992 Del. Ch. LEXIS 113 at \*36 n.14 (Oct. 2, 1991) (noting that a duty to disclose may be created where such disclosure is needed to "clarify a misimpression left by an earlier statement or to comply with a contractual disclosure provision").

{23} The Complaint pleads sufficient facts to support the allegation that Mr. Slavin affirmatively concealed information when he had a duty to disclose such information. Accordingly, the Complaint states a cause of action for fraudulent concealment as against Mr. Slavin.

**2.**

{24} Plaintiff's second claim purports to state a cause of action for negligence against all of the directors. Plaintiff alleges that the directors of EPW had a duty to Oberlin to exercise reasonable care to ensure that Oberlin was made aware of certain facts before Oberlin executed the Agreement. (Pl.'s Resp. at 18.) The Complaint alleges that this duty arises directly out of the defendants' roles as directors. There are no allegations that the duty results from any direct communication or active participation by the directors in the negotiations.

{25} The claim for negligence is dismissed as to all defendants. As discussed above, the statutorily defined duty of a corporate director requires only that the director act in good faith, with the care of an ordinarily prudent person in a like position, and in a manner which he or she "reasonably believes to be in the best interest of the corporation." N.C.G.S. § 55-8-30(a). There is no North Carolina statute or case law which extends this duty outside the corporation to third parties. Accordingly, a director of a North Carolina corporation owes no duty to a creditor or potential creditor of the corporation. N.C.G.S. § 55-8-30 official commentary. Thus, a director is not liable merely due to his official role as a director, and therefore is not liable to a creditor of the corporation unless he participated in some wrong against the creditor. *Lillian Knitting*, 237 N.C. at 104, 74 S.E.2d at 356. A finding by this Court that directors owe a duty to corporate creditors would essentially require directors to supervise the details of corporate transactions and would make them guarantors of the corporation's debt. Both of these concepts have long been rejected by the courts of North Carolina. *See Minnis v. Sharpe*, 202 N.C. 300, 162 S.E. 606.

{26}    Plaintiff's third claim is based upon negligent misrepresentation, as defined by the Restatement of Torts (Second), § 552.  The Restatement provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement of Torts (Second) § 552(a)(1977).

{27}    As asserted against the board of directors, plaintiff's reliance upon this theory is misplaced.  The entire basis for the theory of negligent misrepresentation is the existence of "a duty of care arising from the parties' working relationship."  *Davidson and Jones, Inc. v. New Hanover County*, 41 N.C. App. 661, 255 S.E.2d 580 (1979).  Thus, this claim again makes the assumption that the directors of EPW had a duty to Oberlin  As previously discussed, the directors of EPW owed no such duty to Oberlin.  Therefore, the claim for negligent misrepresentation as asserted against Mrs. Slavin, Finn-Egan and Lipkin is dismissed.

{28}    In addition, the facts alleged in this case are clearly distinguishable from the general body of case law on negligent misrepresentation.  Negligent misrepresentation cases typically involve claims against a party who was hired to supply information or provide an analytical report.  *See, e.g., Raritan River Steel v. Cherry, Bekaert & Holland*, 79 N.C. App. 81, 339 S.E.2d 62 (1986), *aff'd in part and rev'd in part*, 322 N.C. 200, 367 S.E.2d 609 (1988) (negligent misrepresentation claim allowed against accountants); *Jenkins v. Wheeler*, 69 N.C. App. 140, 316 S.E.2d 354 (1984) (negligent misrepresentation claim allowed against attorneys); *Alva v. Cloninger*, 51 N.C. App. 602, 277 S.E.2d 535 (1981) (negligent misrepresentation claim allowed against real estate appraiser); *Howell v. Fisher*, 49 N.C. App. 488, 272 S.E.2d 19 (1980) (negligent misrepresentation claim allowed against soil testing company); *Davidson and Jones, Inc. v. City of New Hanover*, 41 N.C. App. 661, 255 S.E.2d 580 (1979) (negligent misrepresentation claim allowed against engineers); *Industries, Inc. v. Construction Co.*, 42 N.C. App. 259, 257 S.E.2d 50 (1979) (negligent misrepresentation claim allowed against architects).

{29}    In fact, the theory of negligent misrepresentation has traditionally been applied to situations where a third party relied upon information prepared by one party for another, and was damaged as a result.  *See, e.g., Davidson and Jones, Inc.*,  41 N.C. App. 661, 255 S.E.2d 580  (general contractor allowed to sue an architect for economic damages incurred as a result of the architect's alleged negligent preparation of plans under the architect's contract with the owner); *Raritan River Steel Co.*, 322 N.C.

200, 367 S.E.2d 609 (creditor of a corporation allowed to pursue claims against the corporation's accounting firm for damages allegedly incurred by reason of the creditor's reliance upon negligently prepared financial statements). This Court does not believe that the tort of negligent misrepresentation was intended to apply to corporate directors who failed to disclose certain information to the corporation's creditors. To apply the theory of negligent misrepresentation to the facts alleged in the Complaint would be to broaden its applicable scope beyond that established by the North Carolina courts. Accordingly, the claim for negligent misrepresentation also fails when asserted against Mr. Slavin.

**4.**

{30} Plaintiff's fourth claim for relief is based upon an alleged breach of fiduciary duty and confidential relationship. A fiduciary relationship exists when the confidence placed in one party results in "domination and influence on the other." *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906. A person holding a corporate position may be considered a fiduciary of a third party only if he "personally participated in the relationship with the third party such that the third party reposed confidence in the person holding the corporate position." *Andrews v. Fitzgerald*, 823 F. Supp. at 377.

{31} Again, as discussed above, corporate directors owe no fiduciary duty to corporate creditors. Oberlin attempts to create a fiduciary relationship from the fact that the Oberlin Loan gave it the right to acquire shares in EPW, a close corporation. This fact does not establish a fiduciary relationship. *See Simons v. Cogan*, 549 A.2d 300, 303 (Del. 1988) (holding that "a convertible debenture represents a contractual entitlement to the repayment of a debt and does not represent an equitable interest in the issuing corporation necessary for the imposition of a trust relationship with concomitant fiduciary duties"). Instead, the relationship between a corporation and the holders of convertible debt securities is contractual in nature. *See Katz v. Oak Indus., Inc.*, 508 A.2d 873, 879 (Del. Ch. 1986). While a fiduciary relationship exists between the shareholders of a corporation and its directors, the duty created by that relationship does not arise with respect to an individual shareholder until after the securities transaction is complete. At the time of the negotiations and the alleged failure to disclose, Oberlin was merely a potential creditor and potential warrant holder of EPW. In fact, Oberlin has never exercised its option to purchase EPW shares and thus has never been a shareholder of EPW. As discussed above, this relationship created no duties from the directors directly to EPW, especially not the duties of a fiduciary.

{32} No reasonable inference can be drawn from these facts that a fiduciary relationship existed between Oberlin and the directors of EPW. The Complaint does not allege any personal participation in this

transaction by Mrs. Slavin, Finn-Egan or Lipkin, which alone is sufficient to defeat this purported claim. *See Andrews v. Fitzgerald*, 823 F. Supp. at 377. In addition, although the Complaint alleges that Mr. Slavin personally participated in the negotiations with Oberlin, it fails to allege any facts which would support a finding that Oberlin reposed special trust and confidence in Mr. Slavin. As discussed above, the allegation that Mr. Slavin had full authority to negotiate the transaction on behalf of EPW does not sufficiently establish a confidential relationship between Mr. Slavin and Oberlin.

{33} Oberlin is a sophisticated commercial lender, licensed by the Small Business Administration and engaged in the business of making loans of the type at issue in this case. (Compl. ¶ 20.) It was familiar with this type of transaction, able to protect its own interests, and performed its own due diligence. (Agreement, Article IIIA.) The transaction at issue was the result of nearly two months of negotiations and communications. (Compl. ¶ 24.) It resulted in a sophisticated transaction involving Subordinated Debentures carrying a significant rate of interest, and included Stock Purchase Warrants. (Agreement § 1.01.) Furthermore, the Agreement affirmatively demonstrates that Oberlin obtained the independent advice of counsel with respect to the Oberlin Loan (Agreement § 8.09), a fact which also defeats any claim for constructive fraud. *See Watts v. Cumberland County Hospital Systems*, 317 N.C. 321, 345 S.E.2d 201 (1987). These facts directly contradict any assertion that Oberlin placed special trust and confidence either in the directors of EPW or in Mr. Slavin individually. Therefore, the claims for breach of fiduciary duty as asserted against all defendants are dismissed.

**5.**

{34} Plaintiff's fifth claim is for unfair and deceptive trade practices. In order to state a claim for unfair and deceptive trade practices, plaintiff must allege facts to support a finding that (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff. *See Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 464 S.E.2d 47 (1995). The transaction with Oberlin was not simply a loan transaction. It was a sophisticated transaction involving corporate debentures, and a securities transaction by which Oberlin acquired a Stock Purchase Warrant which entitled it to purchase 199.91 shares of the Class B common stock of EPW. (Agreement §§ 1.02 and 3.07.) These facts defeat Oberlin's purported Chapter 75 claim as a matter of law.

{35} North Carolina courts have repeatedly held that the provisions of Chapter 75 do not apply to securities transactions. *See Skinner v. E.F. Hutton & Co.*, 314 N.C. 267, 333 S.E.2d 236 (1985); *The HAJMM Co. v. House of Raeford Farms*, 328 N.C. 578, 403 S.E.2d 483 (1991). Chapter 75 does not apply to such transactions because they are not "in or affecting commerce" as required by Chapter 75,

but instead are intended to raise capital. *Raeford Farms*, 403 S.E.2d at 493.

{36}  In *Raeford Farms*, the Supreme Court of North Carolina determined that the issuance and redemption of revolving fund certificates in an agricultural cooperative were not "business activities," and therefore were not governed by Chapter 75. The Court reasoned that the purpose of such transactions was not part of the entities' business activities; their purpose was to raise capital, either to organize the business or to enable it to continue as an existing business. *Id.* The loan agreement, subordinated debenture, and share purchase warrants which were involved in the Oberlin Loan were part of a transaction similar to that in *Raeford Farms*. EPW's regular business activity was the sale of automotive parts. The purpose of the Oberlin Loan was to raise capital. As affirmatively demonstrated in the Agreement, the proceeds were used to pay existing short term debt and for "working capital purposes." (Agreement, Schedule 4.03.) Accordingly, while the Oberlin Loan may not have involved "conventional securities," the nature and purpose of the transaction was identical to that in *Raeford Farms*: to raise capital to sustain the business organization. Therefore, the claim for unfair and deceptive trade practices as asserted against all defendants is dismissed.

**6.**

{37}  Plaintiff's sixth claim is for punitive damages. For the reasons stated above, the causes of action asserted against Mrs. Slavin, Finn-Egan and Lipkin are dismissed, and therefore the claim for punitive damages against these defendants is also dismissed. However, because plaintiff has stated a claim for fraudulent concealment against Mr. Slavin, plaintiff is entitled to seek punitive damages from Mr. Slavin.

{38}  Defendants argue that plaintiff's purported claim for punitive damages should be dismissed pursuant to Rule 8(a)(2) and Rule 41(b) of the North Carolina Rules of Civil Procedure. Plaintiff's complaint seeks "$10,000,000.00" in punitive damages. Such a request is in clear violation of Rule 8(a)(2). Dismissal for violation of Rule 8(a)(2) is a permissible sanction. *See Jones v. Boyce*, 60 N.C. App. 585, 299 S.E.2d 298 (1983). However, it is recognized that dismissal of the entire complaint with prejudice is an extreme sanction which should be applied only if the court determines that less drastic sanctions will not suffice. *See Harris v. Maready*, 311 N.C. 536, 319 S.E.2d 912 (1984).

{39}  This Court believes that a sanction other than dismissal is appropriate. Accordingly, the Court orders that the claim for punitive damages be stricken from the Complaint, with the provision that the plaintiff will be allowed to amend the Complaint to assert a proper request for punitive damages.

**Conclusion**

{40}    The allegiance of corporate directors is to the corporation, not to third parties.  Directors ordinarily do not owe a duty to corporate creditors.  The claims asserted in this action are based on the allegation that the directors of EPW failed to disclose certain material information to a potential creditor, Oberlin.  Thus, all of the claims are dependent upon a showing that the directors had a duty to disclose such information.  This Court finds that absent any obligation arising out of the Loan Security Agreement, the defendant directors did not owe a duty of disclosure to Oberlin.  Because Mr. Slavin was the sole director involved in the negotiation of the Loan Security Agreement with Oberlin, a duty of disclosure arose in him alone.  Accordingly,  Mrs. Slavin, Finn-Egan and Lipkin owed no duty of disclosure to Oberlin.  Furthermore, Mrs. Slavin, Finn-Egan and Lipkin were not actively involved in the transaction between EPW and Oberlin, and therefore may not be held liable for any tort committed by Mr. Slavin.  Thus, the tort claims asserted against Mrs. Slavin, Finn-Egan and Lipkin are dismissed because plaintiff failed to assert facts which support a finding that the board of directors owed a duty to Oberlin.  In addition, this Court finds that Chapter 75 of the North Carolina General Statutes does not apply to the facts in this case because the purpose of the transaction at issue was to raise capital, and thus the acts in question were not in or affecting commerce.

{41}    Therefore, it is hereby ordered, adjudged and decreed that:

1.    The claims for fraudulent concealment, negligence, negligent misrepresentation, breach of fiduciary duty, unfair trade practices and punitive damages as asserted against Mrs. Slavin, Finn-Egan and Lipkin are dismissed.

2.    The claims for negligence, negligent misrepresentation, breach of fiduciary duty and unfair trade practices as asserted against Mr. Slavin are dismissed.

3.    The complaint adequately states a claim for fraudulent concealment against Mr. Slavin, and therefore the motion to dismiss this claim as against Mr. Slavin is denied.

4.  The claim for punitive damages as asserted against Mr. Slavin is stricken.  Plaintiff may amend the complaint to state a proper claim for punitive damages, provided that it does so within thirty days from the date of this order.

This the 28th day of April, 2000.

Footnote 1  Although not attached to the Complaint, the Court may properly consider the Agreement on this motion to dismiss pursuant to Rule 12(b)(6) since it is the subject of and is specifically referred to in

the Complaint.  *See Robertson v. Boyd*, 88 N.C. App. 437, 363 S.E. 2d 672, 675 (1988).

Footnote 2  With the exception of allegations specifically against Mr. Slavin, any allegations made against Mrs. Slavin, Finn-Egan or Lipkin are made against them collectively and solely in their joint capacity as director.  The Complaint asserts no specific individual allegations against any of these three directors.  Therefore, throughout this Opinion, the Court may refer to the "board of directors" when discussing the claims as asserted against Mrs. Slavin, Finn-Egan and Lipkin.