LILLIAN KNITTING MILLS COMPANY v. T. B. EARLE, MRS. MARY B. EARLE AND SAM HOUSTON.

(Filed 30 January, 1953.)

**1. Corporations § 7—**

An officer or director of a corporation who makes no misrepresentations to a third person as to the financial worth of the corporation and is without knowledge of the making of such representations by any other officer or director, cannot be held liable in fraud for damage resulting to such third person in extending credit to the corporation upon the strength of misrepresentations made by any other officer or director. G.S. 55-56.

**2. Same: Fraud § 11—**

Plaintiff alleged that defendants, corporate officers and directors, made false and fraudulent statements as to the financial worth of the corporation as an inducement to plaintiff to extend credit to the corporation, and that thereafter defendants had the property of the corporation conveyed to them without payment of consideration in furtherance of their scheme to defraud the corporation's creditors. *Held:* Defendants are entitled to bring out in evidence the fact that one of the pieces of property in question had been reconveyed by the grantee defendant to the corporation.

**3. Fraud § 1—**

The basis for an action for fraud is a definite and specific representation which is materially false. made with knowledge of its falsity or in culpable ignorance thereof, with intent that it be relied upon, and which is reasonably relied upon by the other party to his damage.

**4. Fraud § 12—**

Evidence of misrepresentations made by defendants to a third person, of which plaintiff had no knowledge at the time, and which, therefore, could not have been relied on by plaintiff, is without probative force upon the issue of fraud.

**5. Same: Corporations § 7—Evidence held insufficient to sustain allegations of fraud on part of corporate officers inducing plaintiff to extend credit to corporation.**

This action was instituted by plaintiff against defendants, officers and directors of a corporation, alleging that defendants made false representations to plaintiff as to the financial status of the corporation, promised to advise plaintiff of any material change in the corporation's net worth, which they failed to do, all for the purpose of inducing plaintiff to extend credit to the corporation, which plaintiff did to its damage. *Held:* Upon failure of evidence as to the falsity of the statements made to plaintiff or

the failure of defendants to advise plaintiff of change in the financial status of the corporation or that the assets of the corporation turned over to the receiver were practically worthless as alleged, defendants' motion to nonsuit should have been allowed.

PARKER, J., took no part in the consideration or decision of this case.

APPEAL by defendants from *McLean, Special Judge,* September Civil Term, 1952, of STANLY.

This is a civil action to recover damages resulting from the alleged false and fraudulent representations made by the defendants to induce the plaintiff to extend credit to the Earle Hosiery Corporation, hereinafter called Hosiery Corporation, which caused it to suffer loss.

This case was here on appeal from an order overruling a demurrer to the complaint at the Fall Term, 1950. We affirmed the ruling of the court below and the opinion is reported in 233 N.C. 74, 62 S.E. 2d 492.

The pertinent allegations in the plaintiff's complaint may be stated as follows:

1. That the defendants are citizens and residents of Mecklenburg County, North Carolina, and during the times hereinafter set out were the managing officers and directors of the Hosiery Corporation, a North Carolina corporation, which is now in receivership; that the defendant, T. B. Earle, was the president and treasurer of said corporation, the defendant, Mrs. Mary B. Earle, was the secretary of said corporation, and the defendant, Sam Houston, was the vice-president of such corporation; that the defendants constituted the entire board of directors of the corporation.

2. That the defendant, T. B. Earle, by and with the knowledge, consent and approval of his codefendants, in an endeavor to establish a line of credit with the plaintiff, submitted to the plaintiff by letter dated 7 January, 1949, a financial statement representing the same to be a true and accurate statement of the financial condition of the Hosiery Corporation as of 30 September, 1948.

3. That the plaintiff, relying on the accuracy of said statement, together with the oral representations made by the said T. B. Earle over the telephone and in person as to the financial condition of said Hosiery Corporation, established a line of credit to said Hosiery Corporation; that the said Hosiery Corporation is now indebted to the plaintiff in the sum of $8,373.24, together with interest thereon from 3 June, 1949.

4. That the defendants knew or should have known that the financial statement above referred to was incorrect, and grossly misrepresented the true financial condition of said Hosiery Corporation; that the item shown as an asset on said balance sheet in the amount of $72,543.54 and designated as "Inventories, Merchandise & Material," was grossly in

excess of the true value, and that the defendants well knew or should have known that the same was untrue, inaccurate and misleading; that the defendants knew or should have known that the item listed, "Real Estate, N. Davidson 'Appraised' $24,000.00" was not reasonably worth anything like that amount.

5. That three days after the balance sheet referred to was submitted to the plaintiff, a meeting of the directors of the Hosiery Corporation was held, and the N. Davidson Street property was sold to T. B. Earle for a consideration of $4,000.00; that this action on the part of said defendants was taken for the purpose of cheating and defrauding the plaintiff as well as other creditors of said Hosiery Corporation; and that the plaintiff is advised, informed and believes that the consideration of $4,000.00 was never paid to the Hosiery Corporation.

6. That on 29 April, 1949, the defendants, acting as directors of the Hosiery Corporation, held a special meeting and authorized the conveyance of another piece of real estate situate on Lexington Avenue in the City of Charlotte, to the defendants, T. B. Earle and wife, Mary B. Earle, for an undisclosed consideration; that the property consists of a house and lot which is occupied by the said T. B. Earle and wife, Mary B. Earle, and is reasonably worth $12,500.00; that the plaintiff is informed and believes that nothing was paid to the Hosiery Corporation for this property and that the conveyance was made by the defendants for the purpose of cheating and defrauding this plaintiff.

7. That the said defendants, knowingly and willfully misrepresented the net worth of said Hosiery Corporation for the purpose of showing a good credit picture, and in furtherance of a plan to obtain credit from this plaintiff; that on 31 July, 1946, the defendants filed with Dun & Bradstreet a financial statement showing a net worth of $55,486.35, and on 31 December, 1946, filed with the Federal Government a statement showing a net worth of $29,534.41; that on 30 August, 1947, they filed a statement with Dun & Bradstreet showing a net worth of $65,309.66, and on 31 December, 1947, filed a statement with the Federal Government showing a net worth of only $35,998.11; that on 31 May, 1948, they filed with Dun & Bradstreet a statement showing a net worth of $66,387.51, and on 31 December, 1948, they filed with the Federal Government a statement showing a net worth of only $17,348.91.

8. That on 7 January, 1949, when the defendants, by their false and fraudulent representations, established credit with the plaintiff for the said Hosiery Corporation, they represented to the plaintiff that they would keep it advised as to any change in the financial status of the said Hosiery Corporation; that the defendants continuously thereafter represented to the plaintiff that the Hosiery Corporation was in good financial condition and amply solvent; that the same were false, inaccurate and

untrue, and were made for the purpose of inducing the plaintiff to continue to extend credit to the said Hosiery Corporation when the said defendants knew or should have known that the Hosiery Corporation was insolvent.

9. That the plaintiff relied on the representations made to it by the defendants and extended credit to the said Hosiery Corporation, which is now in receivership, and which has turned over to its receiver assets practically of no value.

The defendants filed an answer in which all the material allegations with respect to fraud and deceit are denied. It is admitted that the Hosiery Corporation was placed in receivership on 14 December, 1949, and that O. W. Clayton was appointed receiver. The defendants in their further answer and defense, allege that on 25 March, 1950, the plaintiff filed a certified claim for $8,373.24 against the Hosiery Corporation with the receiver; that the receivership proceedings are still pending, and the receiver has not paid a dividend on the claim of the plaintiff or on any other claim filed by the creditors of said Hosiery Corporation; that the receiver of the Hosiery Corporation on 3 May, 1951, instituted an action in the Superior Court of Mecklenburg County against T. B. Earle, Mrs. Mary B. Earle, and Sam Houston, and others, to set aside the conveyance dated 12 January, 1949, from the Hosiery Corporation, conveying the N. Davidson Street property to T. B. Earle, and also to set aside a conveyance dated 1 May, 1948 (not 29 April, 1949, as alleged in the complaint), from the Hosiery Corporation to T. B. Earle and wife, Mary B. Earle, of a house and lot on Lexington Avenue in the City of Charlotte, and sets out and makes the pleadings, findings of fact, and the judgment in the receiver's suit, a part of their answer. The trial judge in the receiver's suit found the facts by consent of the parties and entered judgment on his findings. It is disclosed by this judgment that the court found as a fact with respect to the N. Davidson Street property that T. B. Earle paid to the Hosiery Corporation a full, complete and adequate consideration and that the price paid was the reasonable market value thereof; that as to the Lexington Avenue property it was found as a fact that T. B. Earle and wife, Mary B. Earle, borrowed $7,500.00 from a building and loan association and secured the amount by giving a deed of trust thereon; that the proceeds of the loan were paid to the Hosiery Corporation, but since the court could not determine whether T. B. Earle and wife paid the full consideration for this property they were directed to reconvey the property to the receiver of the Hosiery Corporation, subject to the outstanding loan.

A. L. Patterson, treasurer and general manager of the plaintiff, Lillian Knitting Mills Company, testified that he had a conversation with T. B. Earle, president of the Hosiery Corporation; that thereafter he received

a letter from the Hosiery Corporation dated 7 January, 1949, and a financial statement dated 30 September, 1948. The letter reads as follows:

"Gentlemen:

"As per our conversation several days ago, we are pleased to attach hereto a copy of our financial statement as of September 30, 1948. This, we believe, will serve your purpose and as soon as we have a new statement prepared, will be glad to send you a new copy.

"On this statement, you will note that our inventory is very heavy as we had loaded up for the anticipated fall business. We, however, are changing our method of operations and from now on our inventory will not be nearly as heavy as in the past due to this change of policy.

"As agreed with you, all invoices will be taken care of strictly within the 10 day period and we will endeavor to give you a detailed order twice a week to be shipped to us directly at Charlotte.

"Trusting that we will be able to do a volume of business with you, we remain,

> Yours very truly,
> EARLE HOSIERY CORPORATION
> T. B. EARLE."

That the financial statement showed assets of $127,556.90, which included inventories of merchandise and materials of $72,543.54, and N. Davidson Street real estate at an appraised value of $24,000.00. The remaining assets consisted of cash in bank, accounts receivable, and the depreciated value of the plant. The liabilities were listed as accounts payable, $24,319.84; notes payable to bank, $33,500.00; capital stock, $10,000.00, and surplus, $59,737.06.

Mr. Patterson further testified that he relied on the financial statement and Mr. Earle's representations to him as president of Earle Hosiery Corporation in extending them credit.

It further appears from the plaintiff's evidence that from January, 1949, until, but not including, 13 May, 1949, the plaintiff shipped to the Hosiery Corporation merchandise invoiced in a total amount of $56,-497.34 and received payment therefor in strict accordance with the original 10 day credit terms as confirmed in the letter hereinabove set out. But beginning with 13 May, 1949, and continuing until and including 3 June, 1949, the plaintiff shipped to the Hosiery Corporation eight shipments of merchandise, the aggregate value of which totaled $9,373.24. No payment was made for any of this merchandise until 15 July, 1949, when the Hosiery Corporation remitted the sum of $1,000.00 on account, leaving a balance of $8,373.24, which still remains unpaid and is the amount for which judgment was obtained in the trial below.

The evidence further discloses that four of the eight shipments of merchandise made by the plaintiff after 13 May, 1949, to the Hosiery Corporation, were made after the Hosiery Corporation had failed to remit within 10 days for the shipment invoiced on 13 May in accordance with the agreement upon which the original credit was extended. The value of the merchandise shipped after default totaled $7,622.85, being the major portion of the unpaid balance now due the plaintiff.

O. W. Clayton, receiver of the Hosiery Corporation, testified that according to the books of the Hosiery Corporation, the sum of $7,500.00 was credited to the Hosiery Corporation, being the proceeds of a loan secured by T. B. Earle from the Pyramid Life Insurance Company on the N. Davidson Street property. The receiver further stated that he had this property appraised twice, but did not state the value as determined by either appraisal. He also testified that the books of the Hosiery Corporation have entries which show that T. B. Earle advanced money to the Hosiery Corporation from time to time in the aggregate sum of approximately $15,000.00 and for which sum he did not file any claim against the corporation with him as receiver.

The trial judge refused to permit the receiver to testify on cross-examination with respect to the status of the Lexington Avenue property, to which refusal the defendants duly excepted. If permitted to testify, he would have stated that T. B. Earle and wife, Mary B. Earle, had conveyed the property to him as required by the judgment in the receiver's suit; that he had sold the property subject to the outstanding loan and was holding the proceeds from the sale, along with other assets, for distribution to the creditors of the Hosiery Corporation.

W. L. Hemphill testified that he was a certified public accountant; that in September, 1949, he went to the office of the Hosiery Corporation to make an audit for the creditors of the corporation; that in questioning Mr. Earle about the statements filed with Dun & Bradstreet referred to in the pleadings herein, and the discrepancies between the net worth shown on those statements and the net worth on the statements submitted to the Federal Government; that Mr. Earle stated to him that the difference came about by the overstatement of inventories on those submitted to Dun & Bradstreet; that "he wanted to show a better credit picture to his creditors." This witness also stated that he had the real estate described in the pleadings appraised, but did not disclose the result of the appraisal.

The defendants offered no evidence, and the court submitted the following issues to the jury which were answered as indicated.

"1. Did the defendants induce the plaintiff to extend credits to the Earle Hosiery Corporation by fraud and deceit as alleged in the complaint?

"Answer: Yes.

"2. What amount, if any is the plaintiff entitled to recover of the defendants?

"Answer: $8,373.24."

From the judgment entered on the verdict, the defendants appeal and assign error.

*G. T. Carswell, Charles W. Bundy, and Richard M. Welling for defendants, appellants.*

*R. L. Smith & Son for plaintiff, appellee.*

DENNY, J., after stating the case: The defendants assign as error the failure of the trial judge to sustain their motion for judgment as of nonsuit interposed at the close of the plaintiff's evidence, while the appellee relies solely on the case of *Solomon v. Bates,* 118 N.C. 311, 24 S.E. 478, and the principles of law applied therein with respect to the liability of bank directors, to sustain the verdict below.

In the case of *Solomon v. Bates, supra,* this Court, prior to the adoption of our comprehensive laws regulating banks, said, "Where the object of the suit is to charge the directors with liability for a breach of trust, the rule is well settled that relief may be had against any or all those who concurred in the wrong, the tort being treated as several as well as joint. . . . It is quite well settled that an action can be brought against the directors by the depositors and other creditors for damages caused by their gross mismanagement, neglect and false representations, and this without first applying to the corporation itself or to the receiver to bring such action. . . . But both as to third parties and stockholders alike it is a good cause of action against directors that they declare the dividend, as in this case, out of the capital stock or deposits of the bank, and not out of its earnings . . ., and also that they caused false reports to be published by the directors of the condition of the bank. . . . It is not necessary that the directors should know that such reports are false. It is their duty to know that they are true."

The general rule with respect to the liability of bank directors is not altogether applicable to officers and directors of a private corporation. It is said in 7 Am. Jur., Banks, section 316, page 227, *et seq.,* "It is now settled that the directors of a bank are personally liable, at the suit of a depositor, for damages sustained by reason of the insolvency of the corporation when the depositor is induced to place money in the bank solely by false representations of solvency made to the general public by the directors, who ought to have known, and who, by the use of ordinary care, such as it was their duty to have exercised, might have known, that such representations were false. A false report of the condition of the bank

made by the directors of a state bank to officials to whom such report is required to be furnished or a false advertisement published concerning the condition of the bank may give rise to an action against them in favor of persons making the deposits upon reliance of such a report or advertisement." This same authority, 13 Am. Jur., Corporations, section 1088, page 1020, states: "The cases are agreed that a director or officer of a corporation is not liable, merely because of his official character, for the fraud or false representations of the other officers or agents of the corporation or for fraud attributable to the corporation itself, if such director or officer is not personally connected with the wrong and does not participate in it."

The law as stated by the above authority was applied by this Court in *Harper v. Supply Co.,* 184 N.C. 204, 114 S.E. 173, and the verdict sustained against all the directors of the defendant corporation where they had actually participated in the perpetration of the fraud. And also in *Mills v. Mills,* 230 N.C. 286, 52 S.E. 2d 915, where the president of the corporation had signed a bill of sale in which the items listed were at variance with the actual inventory of the merchandise supposed to be transferred thereby. See also *Brite v. Penny,* 157 N.C. 110, 72 S.E. 964.

Moreover, it is provided by G.S. 55-56, that in case of fraud by the officers, directors, managers, or stockholders of a corporation, "the court shall adjudge personally liable to creditors and others injured thereby the officers, directors, managers, and stockholders who were concerned in the fraud."

In this case there is no evidence to support the allegations in the complaint to the effect that Mrs. Mary B. Earle and Sam Houston participated in the negotiations that led to the establishment of a line of credit with the plaintiff. Or that they or either of them assured its officials thereafter that the Hosiery Corporation was solvent. Neither is there any evidence that they participated in the preparation of the financial statement furnished to the plaintiff or that they knew of its existence. There is no evidence on this record that Mrs. Mary B. Earle or Sam Houston ever communicated with any representative or official of the plaintiff at any time before or after 7 January, 1949.

Furthermore, the plaintiff's allegations as to fraud with respect to the conveyance of the N. Davidson Street property are not supported by the evidence. In fact, no loss to the Hosiery Corporation is established as a result of the transaction in connection therewith. According to the evidence, three separate appraisals were made of this property at the request of the receiver and Mr. Hemphill, the certified public accountant, but nowhere in the record is it revealed whether the appraisals were greater or less than the amount shown in the financial statement furnished the plaintiff, or the actual amount the Hosiery Corporation received therefor.

The evidence also reveals that the Lexington Avenue property was transferred 1 May, 1948, and not in April, 1949, as alleged in the complaint. It is further disclosed by the record that this property was not listed as an asset of the Hosiery Corporation in the financial statement as of 30 September, 1948, and furnished to the plaintiff on 7 January, 1949. However, since the plaintiff alleged in its complaint that the transfer of this property was made in April, 1949, for the purpose of cheating and defrauding the plaintiff, it was error to refuse to permit the receiver of the Hosiery Corporation to testify as to the status of the property at the time of the trial.

What are the facts with respect to T. B. Earle? Has the plaintiff established those essential elements of actionable fraud or deceit necessary to a recovery against him? We do not think so.

"The essential elements of actionable fraud or deceit are the representation, its falsity, *scienter,* deception, and injury. The representation must be definite and specific; it must be materially false; it must be made with knowledge of its falsity or in culpable ignorance of its truth; it must be made with fraudulent intent; it must be reasonably relied on by the other party; and he must be deceived and caused to suffer loss." *Electric Co. v. Morrison,* 194 N.C. 316, 139 S.E. 455; *Berwer v. Insurance Co.,* 214 N.C. 554, 200 S.E. 1; *Hill v. Snider,* 217 N.C. 437, 8 S.E. 2d 202; 37 C.J.S., Fraud, section 3, page 215.

The plaintiff alleges that on 7 January, 1949, when the defendants established credit with the plaintiff for the Hosiery Corporation, they represented to the plaintiff that they would keep it advised as to any change in the financial status of the Hosiery Corporation; that they continuously thereafter repeated to the plaintiff that the Hosiery Corporation was in good financial condition and amply solvent. No evidence whatever was offered in support of these allegations.

The plaintiff also alleges that in furtherance of defendants' plan to obtain credit from it, they furnished certain financial statements to Dun & Bradstreet in the years 1946, 1947, and 1948 in which the value of the inventories are overstated. The defendants admit in their answer that certain financial statements were furnished to Dun & Bradstreet but they deny that they knowingly or willfully misrepresented the net worth of the Hosiery Corporation. Conceding that Mr. Earle's statement with respect to the financial reports furnished to Dun & Bradstreet constitutes evidence of a fraudulent practice, there is no evidence that these reports played any part in the establishment of credit with the plaintiff. In fact, the evidence is to the effect that the information with respect to these statements was not obtained until Mr. Hemphill, the certified public accountant, was making his audit for the creditors of the Hosiery Corporation in September, 1949. Moreover, Mr. Patterson, the treasurer and

general manager of the plaintiff, testified that he relied on the financial statement (as of 30 September, 1948) and Mr. Earle's representations to him as president of the Hosiery Corporation in extending them credit.

It is alleged in the complaint that the amount of $72,543.54 designated in the financial statement furnished plaintiff as "Inventories, Merchandise & Material," was grossly in excess of the true value. However, no evidence was offered in support of this allegation.

It is further alleged in the complaint that the assets of the Hosiery Corporation turned over to its receiver are practically of no value. The plaintiff offered no evidence in support of this allegation. The value of the assets turned over to the receiver by the Hosiery Corporation, the amount of the claims against the corporation filed with the receiver, and whether the Hosiery Corporation is solvent or insolvent cannot be ascertained from the evidence offered in the trial below.

A creditor of a corporation in order to recover his claim against an officer or director of a corporation for fraud or deceit, must show more than an unpaid claim against the corporation. The creditor must establish an actual loss flowing from the fraudulent misrepresentations of such officer or director. "Fraud without damage or damage without fraud is not actionable; but, where both concur, an action lies." 37 C.J.S., Fraud, section 3, page 215.

We do not think the evidence adduced in the trial below is sufficient to support a verdict for fraud or deceit. Hence, the failure of the court below to sustain the defendants' motion for judgment as of nonsuit is

Reversed.

PARKER, J., took no part in the consideration or decision of this case.