RICHARD SCHLIEPER and WAYNE PYRTLE, Plaintiffs v. HORACE M. "JAY" JOHNSON, JR., and AXIOM INTERMEDIARIES, LLC, Defendants

No. COA07-1476

(Filed 3 February 2009)

**1. Fraud— negligent misrepresentation—sales price—motion to dismiss—sufficiency of evidence**

The trial court did not err by dismissing under N.C.G.S. § 1A-1, Rule 12(b)(6) plaintiff employees' claims for fraud and negligent misrepresentation regarding the sales price in the Agreements to Terminate because: (1) plaintiffs did not allege that defendants either prepared or had access to the pertinent Brown document at any time; (2) the reductions in the "sales price" which plaintiffs contend amounted to a discrepancy between the Phantom Sales Calculation and the Brown Acquisition Summary Form were set forth with specificity and clarity in the Phantom Sales Calculation and were the basis of each of the Termination Agreements; and (3) these reductions were affirmatively disclosed and agreed to by each plaintiff.

**2. Contracts— breach of contract—motion to dismiss—profit distributions—bonus—sufficiency of evidence**

Although the trial court did not err by dismissing under N.C.G.S. § 1A-1, Rule 12(b)(6) plaintiff employees' claims for breach of contract for 2005 profit distributions and plaintiff Pyrtle's claim based upon the 2005 bonus, it erred regarding plaintiff Schlieper's claim based upon the 2005 bonus because: (1) Paragraph 34 of the Schlieper's complaint alleged that a 2005 bonus was due him under the terms of his employment, and these allegations are not inexorably tied to the Letter of Understanding and thus are not necessarily barred by Schlieper's Agreement to Terminate; and (2) the trial court looked beyond the allegations of the complaint and its appended documents to conclude that Schlieper was not entitled to a bonus based on his management position.

**3. Unfair Trade Practices— motion to dismiss—inapplicable to general employment relationships**

The trial court did not err by dismissing plaintiffs' claims for unfair and deceptive trade practices under N.C.G.S. § 75-1.1 because: (1) the statute does not apply to general employment

relationships; (2) the pleadings disclose that plaintiffs were employees who were compensated through a combination of salary and incentives which were tied to the company's profits, and the 2002 Letters of Understanding granted no equity interest to plaintiffs; and (3) there were no allegations of any conduct that would constitute activity affecting commerce.

Appeal by plaintiffs from judgment entered 6 September 2007 by Judge Ben F. Tennille in the North Carolina Business Court. Heard in the Court of Appeals 21 August 2008.

*Forman Rossabi Black, P.A., by Amiel J. Rossabi and S. Brian Walker, for plaintiffs-appellants.*

*Ragsdale Liggett PLLC, by Mary Hulett, Jon David Hensarling and Amie C. Sivon, for defendants-appellees.*

STEELMAN, Judge.

Where the calculations of the amounts to be paid to plaintiffs under an Agreement to Terminate were set forth with clarity and specificity, the trial court did not err in dismissing plaintiffs' claims for fraud and negligent misrepresentation. Plaintiffs' claims for 2005 profit distributions were barred by the Agreements to Terminate. Where the pleadings clearly reveal that plaintiffs were employees and not partners in a business, the complaint fails to state a claim for unfair and deceptive trade practices under Chapter 75. As to plaintiff Schlieper's claims for a 2005 bonus, the complaint contains allegations sufficient to support the claim, and the trial court erred in dismissing this claim.

## I. Factual Background

The facts alleged in plaintiffs' complaint, and documents appended thereto, reveal that: Plaintiffs Richard Schlieper (Schlieper) and Wayne Pyrtle (Pyrtle) and defendant Horace Johnson, Jr. (Johnson) were long-term business associates. In 2000, Schlieper accepted employment with defendant Axiom Intermediaries, LLC ("Axiom"), where Johnson was Chairman and Chief Executive Officer. Two years later, Schlieper signed a Letter of Understanding, granting him a "phantom interest" in Axiom and a 5% share of Axiom's net profits. Pyrtle also signed a Letter of Understanding, granting him a "phantom interest" in Axiom and a 2.5% share of Axiom's net profits. Neither Schlieper nor Pyrtle was

granted an equity interest in Axiom, nor did either assume any risk of loss. Each Letter of Understanding expressly provided that each plaintiff had a 0% equity stake and 0% share of any losses in Axiom.

Both Schlieper's and Pyrtle's Letters of Understanding ("the 2002 Letters of Understanding") included the following provision:

**Parachute:**

If the majority ownership of the Company elects to sell the Company to a 3rd Party while the Employee is an active employee of the Company, the Company will pay the Employee his share times the "sale price" less his share times $7,000,000 plus an interest component. The interest component shall be 6.0% of the Employee's share times $7,000,000 compounded annually.

*The "sale price" as used in this section refers only [to] the portion of the total selling price that is related to the Goodwill of the Company. All other assets are to be excluded.*

(emphasis in original).

In 2005, Johnson advised plaintiffs that he was considering a sale of Axiom to Brown & Brown, Inc. ("Brown") and that the projected sales price was "about thirty-seven million dollars." On 12 December 2005, each plaintiff received letters from Johnson on Axiom letterhead regarding the prospects of the merger with Brown in which Axiom's sales price was represented to be $35.6 million. Pyrtle's letter promised a $75,000 bonus for the 2005 year; Schlieper's made no mention of a 2005 bonus.

Each letter included two attachments. Neither the letters nor the attachments mentioned 2005 profit distributions. The first attachment, unique to each employee, was labeled:

Axiom Intermediaries, LLC
*Acquisition by Brown and Brown, Inc.*

This attachment stated the requirements and consideration for continued employment with Brown. Both plaintiffs were subject to the same two requirements:

**Requirements:**

1. Dissolution of Phantom Stock Agreement

2. Execution of Brown & Brown Employment Agreement

The second attachment, labeled "WP Phantom Calculation[,]" calculated a "Net Payout" to plaintiffs based upon the provisions of the Parachute provision, *supra*, in the 2002 Letters of Understanding.

On 29 December 2005, pursuant to the requirements stated in the 12 December 2005 letters and attachments, *supra*, each plaintiff separately signed an Agreement to Terminate his 2002 Letter of Understanding. Article I of Schlieper's 2005 Agreement to Terminate read:

Section 1.1—*Termination of LOU*. In consideration of the cash payment set forth in Section 1.2 of this Article I, the LOU previously entered into by and between the Company and Schlieper is hereby terminated and of no further legal effect as of the date of this Agreement.

Section 1.2—*Consideration*. The cash payment to be made to Schlieper for agreeing to terminate the LOU is . . . ($1,318,317.00).

Section 1.3—*Timing of Payment*. The Company shall pay the consideration to Schlieper within forty-five (45) days of the execution of this Agreement.

There was no mention of a 2005 profit distribution.

In consideration for signing the Agreements, Schlieper received $1,318,317, and Pyrtle received $659,408. Pyrtle was further entitled to a $75,000 2005 bonus under the terms of his 12 December 2005 letter and attachments.

## II.  Procedural History

On 28 December 2006, plaintiffs filed suit against Johnson and Axiom (together, "defendants") in the Superior Court of Guilford County. The complaint sought monetary damages based upon claims for fraud, unfair and deceptive trade practices, negligent misrepresentation, and breach of contract. The case was designated a complex business case in February 2007 pursuant to N.C. Gen. Stat. § 7A-45.4(a). On 2 March 2007, defendants filed answers denying the material allegations of the complaint and asserting a number of affirmative defenses.

On 2 April 2007, defendants filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. On 6 September 2007, the trial court entered an order which granted in part and denied in part defendants' motion to dismiss. The trial court dismissed plaintiffs' claims for fraud, unfair

SCHLIEPER v. JOHNSON

[195 N.C. App. 257 (2009)]

and deceptive trade practices, and negligent misrepresentation. The trial court also dismissed three of plaintiffs' claims for breach of contract, leaving only Pyrtle's claim for breach of contract regarding his 2005 bonus. On 28 September 2007, Pyrtle took a voluntary dismissal of this claim.

Plaintiffs appeal.

## II. Standard of Review

On a Rule 12(b)(6) motion to dismiss, the question is whether, as a matter of law, the allegations of the complaint, treated as true, state a claim upon which relief can be granted. *Isenhour v. Hutto*, 350 N.C. 601, 604, 517 S.E.2d 121, 124 (1999). Dismissal under Rule 12(b)(6) is proper when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim. *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985).

*Wood v. Guilford Cty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002). "A complaint should not be dismissed under Rule 12(b)(6) '. . . unless it affirmatively appears that plaintiff is entitled to no relief under any state of facts which could be presented in support of the claim.' " *Ladd v. Estate of Kellenberger*, 314 N.C. 477, 481, 334 S.E.2d 751, 755 (1985) (quoting *Presnell v. Pell*, 298 N.C. 715, 719, 260 S.E.2d 611, 613 (1979)). We review the trial court's decision *de novo*, treating plaintiff's factual allegations as true. *Hargrove v. Billings & Garrett, Inc.*, 137 N.C. App. 759, 760, 529 S.E.2d 693, 694 (2000); *Wood* at 166, 558 S.E.2d at 494. When documents are attached to and incorporated into a complaint, they become part of the complaint and may be considered in connection with a Rule 12(b)(6) motion without converting it into a motion for summary judgment. *Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204, 652 S.E.2d 701, 707 (2007).

## III. Analysis

### A. Claims Based upon Fraud and Negligent Misrepresentation

[1] In their first two arguments, plaintiffs contend that the trial court erred in dismissing their claims for fraud and negligent misrepresentation pursuant to Rule 12(b)(6) of the Rules of Civil Procedure. We disagree.

Plaintiffs allege that defendants engaged in fraud and negligent misrepresentation in procuring plaintiffs' consent to the two Agreements to Terminate that were a condition to the asset sale to Brown. The basis of this assertion is a document, attached as Exhibit I to plaintiffs' complaint, styled as "Brown Brown, Inc. Acquisition Summary Form." This is an internal Brown document, not an Axiom document, which shows a total purchase price of Axiom as $60,244,702.57. The document shows the purchase price to be composed of a number of different components:

| | |
|---|---|
| Expirations | $17,404,688.14 |
| Goodwill | 42,129,138.88 |
| Non-Compete Agreement | 31,000.00 |
| Tangible Property | 435,273.00 |
| Other | 244,702.59[1] |
| Total Purchase Price | $60,244,702.59 |

Plaintiffs allege that defendants fraudulently and negligently misrepresented the sales price in the Agreements to Terminate as being only $35,672.00, and based the "phantom calculation" upon this number, rather than the "true" sales price, which was much higher. Plaintiffs did not allege that defendants either prepared or had access to the Brown document at any time.

> "The essential elements of actionable fraud or deceit are the representation, its falsity, *scienter*, deception, and injury. The representation must be definite and specific; it must be materially false; it must be made with knowledge of its falsity or in culpable ignorance of its truth; it must be made with fraudulent intent; it must be reasonably relied on by the other party; and he must be deceived and caused to suffer loss."

*Lillian Knitting Mills Co. v. Earle*, 237 N.C. 97, 105, 74 S.E.2d 351, 356 (1953) (citing *Leggett Elec. Co. v. Morrison*, 194 N.C. 316, 139 S.E. 455 (1927); *Berwer v. Union Cent. Life Ins. Co.*, 214 N.C. 554, 200 S.E. 1(1938); *Hill v. Snider*, 217 N.C. 437, 8 S.E.2d 202 (1940); 37 C.J.S. Fraud, § 3 (2008)).

> The tort of negligent misrepresentation occurs when in the course of a business or other transaction in which an individual has a pecuniary interest, he or she supplies false information for the guidance of others in a business transaction, without exercis-

---

1. This figure is further broken down to consist of brokerage receivables of $171,812.48 and prepaids and deposits of $72,890.11.

ing reasonable care in obtaining or communicating the information. *See Howell v. Fisher*, 49 N.C. App. 488, 272 S.E.2d 19 (1980), *disc. rev. denied*, 302 N.C. 218, 277 S.E.2d 69 (1981).

*Fulton v. Vickery*, 73 N.C. App. 382, 388, 326 S.E.2d 354, 358 (1985), *review denied*, 313 N.C. 599, 332 S.E.2d 178 (1985).

As was clearly noted by the trial judge in his order, plaintiffs' complaint uses the term "sales price" as found in the Letters of Understanding, the 12 December 2005 phantom calculation, the 29 December 2005 Agreement to Terminate, and the Brown Acquisition Summary, interchangeably. Even a cursory reading of these documents reveals that they are not interchangeable. When reviewing pleadings with documentary attachments on a Rule 12(b)(6) motion, the actual content of the documents controls, not the allegations contained in the pleadings. *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001) (contrary terms of loan agreement attached to the complaint controlling over allegations).

It is undisputed from plaintiffs' complaint that the parties utilized the computation contained in the parachute provision of the 2002 Letters of Understanding to determine the amount due under the Termination Agreements. As noted above, this required multiplying the shares of Schlieper's (5%) and Pyrtle's (2.5%) times the phantom sales price, less his share times $7,000,000.00 plus an interest component. Specifically, the 2002 Letters of Understanding provided, in italics, that: "The 'sale price' as used in this section refers only [to] the portion of the total selling price that is related to the Goodwill of the Company. All other assets are to be excluded." Thus, on its face, the formula under the "Parachute Provision" does not encompass the entire "sales price" of the company, but only that portion related to Goodwill.

In the Phantom Calculation contained in the 12 December 2005 letters to the plaintiffs, the phantom sales price was specifically computed as follows:

| | |
|---|---:|
| Projected NI for Sales Calculation | $ 7,500,000 |
| Less Reduction in HMJ Salary | (615,000) |
| Less Service Brokerage (85% of 2006) | (676,000) |
| Less Johnson Mgmt Bonus Pool | (1,250,000) |
| Less Reduction in Airplane Costs | (500,000) |
| Adjusted NI for Phantom Sales Calculation | 4,459,000 |
| Multiple | 8.00 |

SCHLIEPER v. JOHNSON

[195 N.C. App. 257 (2009)]

| | |
|---|---|
| **Adjusted Phantom Sales Price** | 35,672,000 |
| Less approx Fixed Assets | (458,323) |
| **NET Adjusted Phantom Sales Price** | 35,213,677 |

The calculation then multiplied the Net Adjusted Phantom Sales Price ($35,213,677) times the individual plaintiff's share, which was then reduced by his respective percentage of $7,000,000 plus the interest component. These calculations resulted in a total payout for Schlieper of $1,318,317, and for Pyrtle of $659,408.

As noted above, the Brown Acquisition Summary Form shows a purchase price at closing of $60,244,702.57. This sum consists of $60,000,000 plus the sum of $244,702.59 for receivables and prepaids and deposits. We note that the total sales price of $60,000,000 is the identical amount which would appear in the Phantom Calculation ($7,500,000 x 8.0) if there were not reductions made to that figure, which resulted in a Phantom Sales Price of $35,672,000.[2]

The reductions in the "sales price" which plaintiffs contend amounted to a discrepancy between the Phantom Sales Calculation and the Brown Acquisition Summary Form were set forth with specificity and clarity in the Phantom Sales Calculation and were the basis of each of the Termination Agreements. Where these reductions were affirmatively disclosed and agreed to by each of the plaintiffs, we fail to discern how plaintiffs' complaint states a claim for either fraud or negligent misrepresentation. *Earle*, 237 N.C. at 105, 74 S.E.2d at 357; *Vickery*, 73 N.C. App. at 388, 326 S.E.2d at 359. The ruling of the trial court dismissing these claims is affirmed.

### B. Breach of Contract Claims

[2] In their next two arguments, plaintiffs contend that the trial court erred in dismissing their claims for breach of contract pursuant to Rule 12(b)(6) of the Rules of Civil Procedure. We agree in part and disagree in part.

Plaintiffs' complaint set forth four claims for breach of contract. As to each plaintiff, the complaint alleged that defendants breached agreements to pay a 2005 profit distribution and a bonus for the year 2005. The trial court dismissed three of these claims, leaving only Pyrtle's claim as to the 2005 bonus.

2. Since the Phantom Sales Price was based exclusively upon Goodwill, and there was no adjustment to the Phantom Sales Price for the $244,702.59, this figure does not impact our analysis.

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000) (citation omitted). A contract, express or implied, requires assent, mutuality, and definite terms. *Horton v. Humble Oil & Refining Co.*, 255 N.C. 675, 679, 122 S.E.2d 716, 719 (1961). The trial court may reject allegations that are contradicted by documents attached to the complaint. *Oberlin Capital*, 147 N.C. App. at 60, 554 S.E.2d at 847.

### 1. Profit Distributions

The plaintiffs' claims for 2005 profit distributions are based upon an alleged breach of the 2002 Letters of Understanding. The 2005 Agreements to Terminate specifically stated that "the LOU previously entered into by and between the Company and [Schlieper or Pyrtle] is hereby terminated and of no further legal effect as of the date of this Agreement."

Further, the 12 December 2005 letters which contained the computations for the amounts to be paid for the termination of the Letters of Understanding stated that the payments represented "the dissolution of the Phantom Stock Plan and your contributions to Axiom for the past, present and envisioned in the future." Judge Tennille correctly concluded that "any obligation to pay Plaintiffs' profit distributions was dissolved by the December 29 agreements. . . ."

The trial court's dismissal of the breach of contract claims for 2005 profit distributions is affirmed.

### 2. Schlieper Bonus

We note that, with respect to the claims for breach of contract for the 2005 bonus, there are significant differences between Schlieper and Pyrtle. In a letter dated 1 September 2000, which is attached to the complaint as Exhibit B, Schlieper was offered an annual salary of $125,000, "plus a bonus to be determined." In the 12 December 2005 letter to Pyrtle, it was stated that "[f]or the 2005 year you will receive a bonus of $75,000 in appreciation and recognition of your contribution to the success of the Company." In the 12 December 2005 letter to Schlieper, there is no reference to a bonus being paid to Schlieper.

Based upon this distinction, Judge Tennille denied the motion to dismiss as to Pyrtle's 2005 bonus. However, the motion to dismiss was granted as to Schlieper's claim for a 2005 bonus, based upon two fac-

SCHLIEPER v. JOHNSON

[195 N.C. App. 257 (2009)]

tors: first, that the language in the 1 September 2000 letter made the bonus discretionary to Axiom; and second, that since Schlieper was in a management position, he would not have been entitled to a production/performance bonus.

The allegations in the complaint relevant to this claim are as follows:

> 21. Schlieper . . . received yearly production/performance bonus payments from Axiom as part of [his] total compensation package.
>
> . . .
>
> 34. Schlieper never received the production/performance bonus for the 2005 year which was due him under the terms of his employment. . . .
>
> . . .
>
> 64. Johnson has breached his contract with Schlieper by failing to pay Schlieper any of the performance/production bonus promised to Schlieper.
>
> 65. As a result of Johnson's breach of contract, Schlieper [is] entitled to recover from Johnson an amount in excess of $10,000.00.

Upon consideration of a 12(b)(6) motion, and consistent with notice pleading, we are required to treat plaintiff's allegations as true. *Stein v. Asheville City Bd. of Educ.*, 360 N.C. 321, 325, 626 S.E.2d 263, 266 (2006). Applying this standard, we hold that Schlieper has made sufficient allegations to withstand a Rule 12(b)(6) motion on his claim for a 2005 bonus. Paragraph 34 of the complaint asserts that a 2005 bonus was due him under the terms of his employment. Unlike the profit distribution claims, these allegations are not inexorably tied to the Letter of Understanding and thus are not necessarily barred by Schlieper's Agreement to Terminate. Further, we believe that the trial court looked beyond the allegations of the complaint and its appended documents to conclude that Schlieper was not entitled to a bonus because of his management position. Ultimately, Schlieper must present evidence of a specific agreement that entitles him to a bonus for the year 2005.

As to Schlieper's claim for breach of contract based upon the 2005 bonus, the ruling of the trial court is reversed.

### C. Chapter 75 Claims

**[3]** In their next argument, plaintiffs contend that the trial court erred in dismissing their claims under N.C. Gen. Stat. § 75-1.1. We disagree.

Plaintiffs contend that the allegations in their complaint demonstrate that they were business partners, rather than mere employees, and that, under the rationale of *Sara Lee Corp. v. Carter*, 351 N.C. 27, 519 S.E.2d 308 (1999), the dispute falls within the parameters of N.C. Gen. Stat. § 75-1.1. They further contend that the dispute clearly affected commerce because their "opportunity to halt the sale of Axiom assets" could have a multi-million dollar impact on the reinsurance industry.

> To state a claim for relief for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1, plaintiff must show (1) an unfair or deceptive act or practice by defendant, (2) in or affecting commerce, (3) which proximately caused actual injury to plaintiff. *Miller v. Nationwide Mut. Ins. Co.*, 112 N.C. App. 295, 435 S.E.2d 537 (1993), *disc. review denied*, 335 N.C. 770, 442 S.E.2d 519 (1994).

> N.C. Gen. Stat. § 75-1.1(b) defines "commerce" to include "all business activities, however denominated . . . ." Our Supreme Court has held that " '[b]usiness activities' is a term which connotes the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or *whatever other activities the business regularly engages in and for which it is organized*." *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 594, 403 S.E.2d 483, 493 (1991) (emphasis added).

*Wilson v. Blue Ridge Elec. Mbrshp. Corp.*, 157 N.C. App. 355, 357, 578 S.E.2d 692, 694 (2003); *see also Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 261, 266 S.E.2d 610, 620 (1980), *overruled on other grounds*, ("Before a practice can be declared unfair or deceptive, it must first be determined that the practice or conduct which is complained of takes place within the context of the statute's language pertaining to trade or commerce."). The statute does not apply to general employment relationships. *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 710 (2001) ("[T]he Act does not normally extend to run-of-the-mill employment disputes[.]"); *Blue Ridge, supra; Buie v. Daniel Int'l Corp.*, 56 N.C. App. 445, 448, 289 S.E.2d 118, 119-20 (1982), *review denied*, 305 N.C. 759, 292 S.E.2d 574 (1982).

After a thorough review of plaintiffs' complaint and the documents appended thereto, we hold that *Buie* controls this issue. The pleadings disclose that plaintiffs were employees who were compensated through a combination of salary and incentives which were tied to the company's profits. The 2002 Letters of Understanding granted no equity interest to the plaintiffs. Therefore, plaintiffs had no partnership or equity interest in Axiom.

The *Sara Lee* case upon which plaintiffs rely is not applicable to the facts of this case. In that case, Sara Lee Corporation sued a former employee who was its Information Center Service Administrator. Unknown to Sara Lee, defendant set up four separate computer businesses which sold computer parts and services to Sara Lee at excessive prices. Defendant never disclosed these relationships to Sara Lee. The Supreme Court held that *Buie* was not applicable since the conduct of defendant involved the sale of goods and services which affected commerce. *Sara Lee*, 351 N.C. at 33-34, 519 S.E.2d at 312. In the instant case there are no allegations of any conduct that would constitute activity affecting commerce. The instant case is simply an employment dispute and is controlled by *Buie*.

This argument is without merit.

### V. Conclusion

Because the Complaint did not state a claim upon which relief could be granted, the trial court did not err in dismissing plaintiffs' claims for fraud, unfair and deceptive trade practices, and negligent misrepresentation pursuant to Rule 12(b)(6) of the Rules of Civil Procedure. As to the breach of contract claims, the trial court did not err in dismissing the claims related to profit distribution for 2005. However, the allegations contained in plaintiffs' complaint as to Schlieper's claim for a 2005 bonus were sufficient to withstand defendants' Rule 12(b)(6) motion to dismiss, and the dismissal of Schlieper's 2005 bonus claim is reversed.

In light of our holdings, we need not reach plaintiffs' remaining arguments. The order of the trial court is

AFFIRMED IN PART, REVERSED IN PART.

Judges GEER and STEPHENS concur.